1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11 | KING MWASI,                              ) Case No.: 1:13-cv-00695 – JLT (PC)
                                             )
12 |            Plaintiff,                   ) ORDER DISMISSING THE COMPLAINT WITH
                                             ) LEAVE TO AMEND
13 |       v.                                )
                                             ) (Doc. 14)
14 | CORCORAN STATE PRISON, et al.,          )
                                             )
15 |            Defendant.                   )
                                             )
16 |_____     )

17        Plaintiff King Mwasi ("Plaintiff") is state prisoner proceeding *pro se* in a civil rights action

18 pursuant to 42 U.S.C. § 1983. (Doc. 1).  On August 1, 2013, Plaintiff initiated this matter against 14

19 Defendants, alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments. (Doc. 14 at

20 2-3).  As required by 28 U.S.C. § 1915A, the Court screens the complaint, and for the reasons set forth

21 below, the Court **ORDERS** that the complaint be **DISMISSED.**

22 **I.        Screening Requirement**

23        Because Plaintiff seeks redress from governmental employees in a civil action, the Court is

24 required to screen his complaint in order to identify any cognizable claims.  28 U.S.C. § 1915A(a)-(b).

25 The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is

26 frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

27 relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. §

28 1915(e)(2)(B)(i)-(iii).

1

1    II.    PLEADING STANDARDS

2      A. Fed. R. Civ. P. 8(a)

3       "Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards

4    than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting

5    Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[They] can only be dismissed for failure to state a

6    claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim

7    which would entitle him to relief.'" Id.  Under Federal Rule of Civil Procedure 8(a), "[a] pleading that

8    states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's

9    jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to

10   relief; and (3) a demand for the relief sought."  Fed. R. Civ. P. 8(a).  Each allegation must be simple,

11   concise, and direct. Fed. R. Civ. P. 8(d)(1).   While a complaint "does not need detailed factual

12   allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more

13   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

14   do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations

15   omitted).

16       In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-

17   conclusory factual allegations as true, and determines whether those non-conclusory factual

18   allegations accepted as true state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556

19   U.S. 662, 676-684 (2009).  "The plausibility standard is not akin to a probability requirement, but it

20   asks for more than a sheer possibility that a defendant has acted unlawfully."  (Id. at 678) (internal

21   quotation marks and citation omitted).  In determining plausibility, the Court is permitted "to draw on

22   its judicial experience and common sense." Id. at 679.

23      B. 42 U.S.C. § 1983

24       In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he

25   suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that

26   the violation was proximately caused by a person acting under color of state law. *See* Crumpton v.

27   Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a

28   plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act,

1   or omitted to perform an act which he was legally required to do that caused the deprivation of which

2   the plaintiff complains. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v.

3   Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). 42 U.S.C. § 1983 does not create substantive rights, but

4   rather services as a vehicle to protect federal rights which have been established elsewhere. Graham v.

5   Connor, 490 U.S. 386, 393-394 (1989).

6   **III.   PLAINTIFF'S COMPLAINT**

7          Plaintiff presents a disjointed complaint that makes his cause of action difficult to ascertain.

8   Nonetheless, the Court has reviewed the complaint and summarizes, as best as it can, as follows: [1]

9          Plaintiff suffers from a plethora of medical conditions, including, lower extremity and back

10  pain, bladder control issues, and cognitive impairment. (Doc. 14 at 5 ¶ 2, 10 ¶ 25, 15). Over the years,

11  the CDCR has incarcerated Plaintiff at a number of different prisons in California. Id. at 6 ¶ 2.

12         In March 2009, the CDCR transferred Plaintiff to California State Prison, Los Angeles County

13  ("LAC"). (Doc 14 at 9 ¶ 20). Plaintiff's medical problems continued at LAC and his doctors did not

14  have his accurate medical files. Id. He was also denied a "tennis shoe chrono." Id. at 9 ¶ 22.

15         On June 7, 2011, the CDCR transferred Plaintiff to California State Prison, Corcoran ("COR").

16  (Doc. 14 at 10 ¶ 26). On his arrival, he informed an unnamed registered nurse of his medical

17  conditions, including his asthma, need for pain medication, and allergy to wool blankets. Id. His

18  medical conditions continued and he received subpar medical care at COR. Id. at 10 ¶¶ 27-31.

19         Plaintiff seemingly suffers from psychiatric issues and was placed in the Psychiatric Services

20  Unit ("PSU") at California State Prison, Sacramento ("SAC") in January of 2013. (Doc. 14 at 13 ¶ 57).

21  At some point, Plaintiff unsuccessfully attempted to commit suicide, because Dr. Teed told him to do

22  so. Id. at 14 ¶ 61. From February to July of 2012, Plaintiff remained at SAC. Id. at 10 ¶ 32.

23         On July 7, 2012, Plaintiff was again transferred to COR. (Doc. 14 at 11 ¶ 39). Two weeks

24  after his arrival, prison personnel discarded his television. Id. at 15 ¶ 66. Plaintiff refused placement

25  in a cell with an "unknown inmate" who was allegedly a threat to others. Id. at 16 ¶ 66. Prison

26  personnel took away Plaintiff's privileges for the following nine months. Id.

27

28

---

[1] The Court does not address allegations arising prior to April 24, 2009.

IV.   **DISCUSSION AND ANALYSIS**

   **A.  Statute of Limitations**

   Plaintiff raises factual allegations that occurred between 2000 to the present. *See generally*, (Doc. 14).   However, prisoners generally have four years from the time the claim accrues to file their action. *See* Wallace v. Kato*, 549 U.S. 384, 387–88, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge).   The Court considers April 24, 2013, to be the determinative date regarding the timeliness of Plaintiff's claims, as it is the date Plaintiff initiated this matter. (Doc. 1).   Thus, the statute of limitations would bar any claims brought prior to April 24, 2009. Therefore, the Court **DISMISSES** any claims brought prior to April 24, 2009, as untimely and declines to address the substantive merits contained therein.

   **B.  Causal Link Required**

   To state a § 1983 claim, a plaintiff must allege facts showing each named defendant either exhibited some sort of "direct personal participation in the deprivation" or "set[] in motion a series of acts by others which the actor [knew] or reasonably should [have known] would cause others to inflict the constitutional injury."   Johnson, 588 F. 2d at 743-744.   There must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Services, 436 U.S. 658, 691-92 (1978); Rizzo, 423 U.S. at 370-71; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

   Plaintiff fails to causally link each Defendant to an act which caused a constitutional injury. For instance, Plaintiff avers that Dr. Perrin confirmed Plaintiff's ankle damage on an unnamed date. (Doc. 1 at 8 ¶ 16).   Nowhere, however, does Plaintiff mention any wrong committed by this defendant. In his first amended complaint, Plaintiff must specifically allege how each named defendant is liable for the claimed deprivation.  Therefore, the complaint is **DISMISSED**.

///

///

4

1

### C.  Eighth Amendment - Excessive Use of Force

2      When prison officials use excessive force against prisoners, they violate the inmates' Eighth

3 Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898,

4 903 (9th Cir. 2002).  In determining whether a prison official has used excessive force, "the core

5 judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline,

6 or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Factors

7 the court may consider in making this determination include: (1) the extent of the injury; (2) the need

8 for force; (3) the relationship between the need and the amount of force used; (4) the threat as

9 reasonably perceived by prison officials; and (5) any efforts made by prison officials to temper the

10 severity of a forceful response. Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

11      Plaintiff presently avers that he was a victim of excessive force a week before he was

12 transferred to Corcoran. (Doc. 14 at 10 ¶ 23).  He provides no further facts beyond an indication that

13 he received injuries to his wrists and hands. Id.  Notably, Plaintiff fails to allege who actually inflicted

14 the excessive force on him.  Should Plaintiff wish the Court to consider this claim in his amended

15 complaint, he must indicate the date on which this happened, who harmed him, the facts surrounding

16 the use of force, and sufficiently describe his injuries.  Thus, Plaintiff fails to state a cognizable claim

17 for an Eighth Amendment excessive use of force and the claim is **DISMISSED**.

18

### D.  Eighth Amendment – Failure to Protect

19      Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from

20 violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting

21 Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).  To establish a violation of

22 this duty, a prisoner must demonstrate that prison officials were "deliberately indifferent to a serious

23 threat to the inmate's safety." Farmer, 511 U.S. at 834.  This requires the prisoner to satisfy both an

24 objective and a subjective component.  First, the prisoner must demonstrate that the alleged

25 deprivation was, in objective terms, "sufficiently serious." Id. at 834 (quoting Wilson v. Seitner, 501

26 U.S. 294, 298 (1991)).  Second, the prisoner must demonstrate that prison officials acted with a

27 sufficiently culpable state of mind.  Prison officials must have known of and disregarded an excessive

28 risk to the prisoner's safety. Id. at 837.

1       According to Plaintiff, in January of 2012, the CDCR transferred him to the PSU of the

2  California State Prison in Sacramento. (Doc. 14 at 13 ¶ 57).  Plaintiff alleges that Dr. Teed, a clinician,

3  told him to commit suicide. Id. at 14 ¶ 61.  He then made an unsuccessful attempt to kill himself. Id. at

4  14 ¶ 62.

5       However, a suicide attempt is actionable only where the act of attempted suicide is non-

6  volitional. Soto v. City of Sacramento, 567 F.Supp. 662, 693-694 (E.D.Cal.1983).  Thus, Plaintiff

7  must allege sufficient facts to demonstrate that the act of attempted suicide was not volitionally taken

8  and was, instead, caused by the Defendant's wrongful conduct.

9       That is to say, plaintiff's attempted suicide, if the result of a mental condition
   proximately caused by [the] defendants' violation of his constitutional rights, which
10      condition prevents him from realizing the nature of his act or controlling his conduct,
   constitutes an intervening (i.e., one cause) but not superceding (i.e., sole cause) of
11      plaintiff's injury and thus does not, as a matter of law, break the chain of proximate
   cause. On the other hand, if at the time of the attempted suicide plaintiff was able to
12      appreciate the nature of his act and able to control his conduct, but chose freely to
   attempt suicide, defendants would not be liable for the injuries sustained by virtue of
13      the attempted suicide.

14  Soto, at 693-694 Thus, Plaintiff fails to state a cognizable Eighth Amendment claim of failure to

15  protect.  Therefore, the claim is **DISMISSED.**

16      **E.  Eighth Amendment - Inadequate Medical Care**

17      Plaintiff complains at length about the medical treatment received while incarcerated.  To

18  establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must

19  demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

20  medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other words, the plaintiff must show

21  the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant.

22  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

23      A medical need is serious "if the failure to treat the condition could result in further significant

24  injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059

25  (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.

26  1997).  Indications that a person has a serious need for medical treatment include: the existence of an

27  injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of

28  a medical condition that significantly affects an individual's daily activities; or the existence of

1    chronic and substantial pain.  McGuckin, 974 F.2d at 1059-60 (citations omitted).

2         A defendant acts with deliberate indifference when he knowingly fails to respond to a serious

3    medical need, thereby inflicting harm on the plaintiff.  See Farmer v. Brennan, 511 U.S. 825, 837-42

4    (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant denies, delays,

5    or otherwise interferes with medical treatment.  See Hutchinson v. United States, 838 F.2d 390, 394

6    (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal standard."  Toguchi v. Chung,

7    391 F.3d 1051, 1060 (9th Cir. 2004).  "Mere 'indifference,' 'negligence,' or 'medical malpractice' will

8    not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)

9    (citing Estelle, 429 U.S. at 105-06).

10        With regard to his medical condition, seemingly Plaintiff suffers from, among other medical

11   conditions, respiratory problems, nerve damage, bladder issues, dermatological issues, chronic pain,

12   ringing in his ears and mental health issues. *See* (Doc. 14 at 10-20).  Plaintiff further indicates how

13   some of these affect his daily abilities, such as his mental impairments cause him to sleep 18 hours a

14   day.  It is apparent that Plaintiff suffers from some serious medical conditions.

15        However, rather than providing sufficient facts to demonstrate that any defendant acted with

16   deliberate indifference, Plaintiff provides a laundry list of grievances he wishes the Court to consider.

17   While he complains at length about how his doctors treated him, he fails to indicate how his medical

18   providers acted with deliberate indifference.  For instance, Dr. Gallagher denied Plaintiff's request for

19   orthopedic shoes, indicating that they were not medically indicated. (Doc. 14 at 8 ¶ 14).   While

20   Plaintiff may object to Dr. Gallagher's, or any of his medical providers', medical assessment and

21   treatment, "*differences of opinion between prisoner and prison doctors fails to show deliberate*

22   *indifference to serious medical needs*." Quiroga v. Green, 1:11-CV-00989-GBC, 2012 WL 3704784

23   (E.D. Cal. Aug. 24, 2012) (*citing* Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)) (emphasis in

24   original).

25        As Plaintiff fails to set forth the specific dates on which he received much of his medical

26   treatment, the Court need not address the substantive merits of each Eighth Amendment claim of

27   inadequate medical care at this time.  In his first amended complaint, Plaintiff must set forth the dates

28   he alleges that prison personnel acted with deliberate indifference toward his serious medical

7

1  condition.  Thus, Plaintiff fails to state a cognizable Eighth Amendment claim of inadequate medical

2  care.  Therefore, the claim is **DISMISSED.**[2]

3       **E.**        **Americans With Disability Act**

4       Plaintiff alleges violations of the Americans with Disabilities Act ("ADA").  The United States

5  Supreme Court has determined that Title II of the Americans with Disabilities Act, 42 U.S.C. Section

6  12131 *et seq.*, which prohibits "public entities" from discriminating against individuals with

7  disabilities because of their disability, applies to state prisons and prisoners. *See* Pennsylvania Dept.

8  Of Corrections v. Yeskey, 524 U.S. 206 (1998)("the [ADA's] language unmistakably includes State

9  prisons and prisoners within its coverage").  A plaintiff states a cause of action under Title II of the

10  ADA where he alleges that "(1) he is an individual with a disability; (2) he is otherwise qualified to

11  participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was

12  either excluded from participation in or denied the benefits of the public entity's services, programs, or

13  activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial

14  of benefits, or discrimination was by reason of his disability." Simmons v. Navajo County, Ariz., 609

15  F.3d 1011, 1021 (9th Cir. 2010).  The ADA does not provide a remedy for inadequate medical

16  treatment of a disability. Simmons, 609 F.3d at 1022.

17       The complaint does not indicate whether defendants denied Plaintiff access to any service or

18  program based on his disability.  Further, while Plaintiff provides the Court a list of his medical

19  problems, he does not indicate which of these medical conditions provides the basis of his disability.

20  Thus, Plaintiff fails to state a cognizable claim under Title II of the ADA.  Therefore, the claim is

21  **DISMISSED**.

22       **F.  Fourth or Fourteenth Amendment Claim**

23       Plaintiff seemingly alleges that COR's confiscation of his television constitutes an unlawful

24

---

25      [2] Plaintiff also alleges that Coleman violations occurred throughout his incarceration with the CDCR.  For instance, Plaintiff indicates that personnel in the PSU would "minimize (sic) his condition [and] fabricate reports." (Doc.

26  14 at 14 ¶¶ 59, 60).  The Court presumes the Plaintiff refers to Coleman v. Wilson, 913 F.Supp.1282, (E.D. Cal. 1995).  In Coleman, the Court addressed the numerous deficiencies present in the CDCR's mental health care system. *See generally*,

27  Coleman, 913 F.Supp.1282.  The Court found that the CDCR's mental health care system was so deficient that it violated the Eighth Amendment right to adequate medical care. Id.  However, the Court did not create a separate cause of action in

28  its ruling in Coleman.  Thus, Plaintiff is advised that he must bring his claims against the PSU under the Eighth Amendment right to adequate medical care in his amended complaint.

1    seizure in violation of the Fourth Amendment.  On the other hand, Plaintiff may allege a deprivation

2    of his television in violation of the due process clause of the Fourteenth Amendment.

3           The Due Process Clause protects prisoners from being deprived of property without due

4    process of law. *See* <u>Gonzales v. Price</u> (E.D. Cal., Dec. 2, 2009) 2009 WL 4718850 *3-4 (citing <u>Wolff</u>

5    <u>v. McDonnell</u>, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and <u>Hansen v. May</u>, 502 F.2d

6    728, 730 (9th Cir.1974).  While an authorized, intentional deprivation of property is actionable under

7    the Due Process Clause, neither negligent nor unauthorized intentional deprivations of property by a

8    state employee "constitute a violation of the procedural requirements of the Due Process Clause of the

9    Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," *See*

10   <u>Gonzales,</u> 2009 WL 4718850 *3-4 (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S.Ct. 3194, 82

11   L.Ed.2d 393 (1984), <u>Logan v. Zimmerman Brush Co</u>., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265

12   (1982) and <u>Quick v. Jones</u>, 754 F.2d 1521, 1524 (9th Cir.1985)).  Thus, where the state provides a

13   meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable

14   violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to

15   established state procedures, regulations, or statutes.  <u>Gonzales,</u> 2009 WL 4718850 *3-4 (citing <u>Piatt</u>

16   <u>v. McDougall</u>, 773 F.2d 1032, 1036 (9th Cir.1985), and <u>Knudson v. City of Ellensburg</u>, 832 F.2d

17   1142, 1149 (9th Cir.1987).

18          Since there is no indication that Plaintiff's property was taken because of an established state

19   procedure, Plaintiff's allegations that his television was confiscated amounts to an unauthorized

20   intentional deprivation. Defendant's actions therefore constitute a violation of due process only if a

21   meaningful post-deprivation remedy for Plaintiff's loss is unavailable.  *See* <u>Hudson</u>, 468 U.S. at 533.

22   Here, Plaintiff has a meaningful post-deprivation remedy.  Namely, Plaintiff may file suit in state court

23   pursuant to California Government Code §§ 900, et seq.  *See* <u>Parratt v. Taylor</u>, 451 U.S. 527, 539

24   (1981) ("[P]ost-deprivation remedies made available by the State can satisfy the Due Process

25   Clause."); <u>Arnold v. Williams</u>, No. CIV S-08-28886 DAD P, 2009 WL 3710522, at *3 (E.D. Cal. Oct.

26   28, 2009) (California Government Code §§ 900, et seq. provide a sufficient post-deprivation remedy

27   for the purposes of due process).  Thus, the claim is **DISMISSED**.

28   ///

### G.  California Tort Claims Act

Finally, Plaintiff alleges a California medical malpractice claim.  However, under the California Tort Claims Act ("CTCA"), a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action.  <u>See</u> Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995).  In pleading a state tort claim, plaintiff must allege facts demonstrating that he has complied with CTCA's presentation requirement.  <u>State of California v. Superior Court (Bodde)</u>, 32 Cal.4th 1234, 1243-44 (2004).  Failure to allege compliance constitutes a failure to state a cause of action and will result in the dismissal of plaintiff's state law claims.  <u>Id</u>.  Given that Plaintiff provides no mention of the CTCA in his complaint, the Court has no jurisdiction to consider the substantive merits of his medical malpractice claim.  Therefore, the California medical malpractice claim is **DISMISSED.**

## V.     LEAVE TO AMEND

The Court will provide Plaintiff a <u>final</u> opportunity to amend his pleading to cure the deficiencies noted in this order. *See* <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted). In his first amended complaint, **<u>Plaintiff must address the deficiencies noted in this Order.  Plaintiff is advised that his failure to do so will result in an order dismissing this action.</u>**

In addition, Plaintiff is cautioned that in his amended complaint he may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>See</u> <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  Plaintiff is also advised that once he files his first amended complaint, his original pleadings are superceded and no longer serve any function in the case. *See* <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, the first amended complaint must be "complete in itself without reference to the prior or superceded pleading."  Local Rule 220.  "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

Finally, Plaintiff's first amended complaint **SHALL** comply with Fed. R. Civ. P. 8(a). While

Plaintiff admirably set forth his original complaint in ten pages, Plaintiff unnecessarily attached 55 pages of exhibits to his original complaint.  There is no need to attach exhibits to Plaintiff's first amended complaint.    Therefore, **Plaintiff's first amended complaint, including the attached exhibits, SHALL NOT exceed 20 pages**.

### ORDER

For the reasons stated above, the Court **HEREBY ORDERS** that:

1.  The complaint (Doc. 14) is **DISMISSED;**

2.  Plaintiff is **GRANTED** 21 days from the date of service of this Order, to file a first amended complaint that addresses the deficiencies set forth in this Order. The first amended complaint must bear the docket number assigned to this case and must be labeled "First Amended Complaint." The First Amended Complaint **SHALL not exceed 20 pages**;

3.  The Clerk of the Court is **DIRECTED** to send Plaintiff the form complaint for use in a civil rights action; and

4.  **Plaintiff is firmly cautioned that failure to comply with this order will result in an order dismissing this action.**

IT IS SO ORDERED.

Dated:   __August 14, 2013__                    ___/s/ Jennifer L. Thurston__
                                                      UNITED STATES MAGISTRATE JUDGE

11