# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KING MWASI,<br><br>    Plaintiff,<br><br>    v.<br><br>CORCORAN STATE PRISON, et al.,<br><br>    Defendant. | Case No.: 1:13-cv-00695-AWI-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT CASE PROCEED ON EIGHTH AMENDMENT MEDICAL CLAIMS AGAINST DEFENDANTS DR. MAHONEY, DR. BLANCHARD, URBANO LCSW, DOE 9; and EXCESSIVE FORCE AND CONDITIONS OF CONFINEMENT CLAIMS AGAINST DEFENDANTS GUARDS CORDOVA, TORRES, AND J. GOMEZ; and AN ADA CLAIM AGAINST DEFENDNAT DR. NGUYEN and DISMISSING ALL OTHER CLAIMS AND DEFENDANTS**<br><br>**(Doc. 29)**<br><br> **30-DAY DEADLINE** |

## I. Background

Plaintiff King Mwasi ("Plaintiff") is a state prisoner proceeding *pro se* in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this matter via a letter which he filed in the Northern District of California. (Doc. 1.) The action was transferred to this Court on May 10, 2013. (Doc. 6.) Plaintiff was ordered to file a complaint, with which he complied. (Docs. 9, 14.) The original Complaint ("Orig. Comp.") was screened and found to be devoid of cognizable claims against any of the named Defendants. (Doc. 17.) In the original screening order, Plaintiff was given various pleading standards applicable to the claims he was attempting to state and admonished that an

1

1  amended complaint must neither exceed 20 pages in length, nor include claims prior to April 24, 2009
2  as they were past the applicable statute of limitations.  (*Id.*)
3        Plaintiff filed the First Amended Complaint ("1st AC") on November 14, 2013.  (Doc. 24.)
4  However, despite the admonishments in the original screening order, the 1st AC contained factual
5  allegations going as far back as December of 2000, doubled the length of allegations, and more than
6  tripled the number of persons named as Defendants without regard for, or any discernable attempt to
7  comply with the original screening order.  (*Id.*)  It was unclear whether Plaintiff was unwilling or
8  unable to follow the instructions in the original screening order.  However, in an effort to give Plaintiff
9  every leniency due to a pro se inmate plaintiff, he was granted one final opportunity to amend and
10 once again directed not to exceed 20 pages in length, nor include claims prior to April 24, 2009 as
11 barred by the applicable statute of limitations.  (Doc. 26.)
12       Plaintiff filed the Second Amended Complaint ("2nd AC") on June 2, 2014.  (Doc. 29.)  Along
13 with the 2nd AC, Plaintiff filed a motion to exceed the page limit, to toll the applicable statute of
14 limitations as to his allegations prior to April of 2009, to have counsel appointed, and to allow him to
15 proceed against reviewers of his medical grievances.  (Doc. 30.)  By separate order, Plaintiff's request
16 to exceed the page limit by one page was granted and his request to have counsel appointed was
17 denied without prejudice.  (Doc. 31.)  Plaintiff's arguments regarding tolling of the statute of
18 limitations and whether he may proceed against reviewers of his medical grievances are addressed
19 herein.
20       Plaintiff has cured some of the previously identified defects.  Plaintiff will be allowed to
21 proceed on his claims in the 2nd AC on his claims under the Eighth Amendment for deliberate
22 indifference of Plaintiff's serious medical needs against Defendants Dr. Mahoney, Dr. Blanchard,
23 Urbano LCSW, and Doe 9; his claims under the Eighth Amendment for excessive use of force and
24 regarding the conditions of his confinement against Defendant Guards Cordova, Torres, and J. Gomez;
25 and his claims under the ADA against Dr. Nguyen in his official capacity.  All other claims and
26 Defendants should be dismissed.
27 / / /
28 / /

II.     **Findings**

    A.     **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

    B.     **The Second Amended Complaint**

Plaintiff's 2nd AC is prolix, verbose, disjointed, and convoluted, though not quite as difficult to understand as the Orig. Comp. and 1st AC were. Despite the prior screening order advising that Rule 18 prohibits bringing unrelated claims and/or Defendants in the same action, and that, at the very least, Plaintiff's claims at separate facilities should be brought in separate actions, Plaintiff persists and complains in the 2nd AC of acts that occurred while he was an inmate at California Correctional Institute ("CCI") (Doc. 29, 2ndAC, ¶ 24), the Correctional Training Facility ("CTF") (*id.*, at ¶¶ 25-26), California Men's Colony ("CMC") (*id.*, at ¶¶ 27-37), the Los Angeles County jail (LAC) (*id.*, at ¶¶ 43, 70), Corcoran State Prison ("COR") (*id.*, at ¶¶ 43, 46-54, 62-68, 74, 78-87), and Sacramento State Prison ("SAC") (*id.*, at ¶¶ 55-61, 70-73, 75-77).

Plaintiff names numerous prison personnel as Defendants in this action. To wit, Plaintiff names: Defendants Gallagher, Griffin, Greenman, Phy, Kumar, and Meyers from CMC (*id.*, at ¶ 8); Defendants Belavich, Swaby, and Finander from LAC (*id.*, at ¶ 9); Defendants Bodinhammer, Moghaddam, Brizendine, Teed, Wheeler, and Doe 7 at SAC (*id.*, at ¶¶ 10-12); Defendants Clark, Macias, McCabe, Nareddy, Nguyen, Yu, Blanchard, Urbano, Balisteros, Reynoso, Dava, Tercero, Vasquez, Beltran, Gomez, Salinas, Banuelos, Gomez, Cordova, Torres, Holland, Zamora, Walker, and Does 6, 8-14 at COR (*id.*, at ¶¶ 13-20); in addition to California Correctional Health Care Services, Corcoran State Prison, and Federal Receiver J. Clark Kelso (*id.*, at ¶¶ 6, 7, 21).

Plaintiff presents his allegations in the 2nd AC in a chronological format and recounts events and his various transfers between facilities from the beginning of his incarceration in December of

3

2000 to the present. The 2nd AC clearly violates Rule 18 and the Court declines to expend its limited resources summarizing all of Plaintiff's unrelated allegations. Rather, while all ninety-six (96) paragraphs of Plaintiff's allegations have been thoroughly reviewed, only his claims and/or allegations pertaining to events that occurred when he was housed at COR (*id.*, at ¶¶ 43, 46-54, 62-68, 74, 78-87) against Defendants Supervisor Clark, CEO Macias, Supervisor McCabe, Dr. Nareddy, Dr. Nguyen, Dr. Yu, Dr. Blanchard, Urbano LCSW, Balisteros LVN, Reynoso LVN, Dava RN, Medical Supervisor Tercero, Supervisor Vasquez RN, Technicians Beltran, E. Gomez, and Salinas, Correctional Guards Banuelos, J. Gomez, Cordova, and Torres, Sergeant Holland, CMOs Zamora and Walker, and Does 6, 8-14 at COR (*id.*, at ¶¶ 13-20) are addressed as these events amount to the most cognizable claims that do not violate Rule 18.[1] However, even Plaintiff's allegations regarding his confinement at COR violate Rule 18 and must be whittled down accordingly.

**C.  Pleading Requirements**

**1.  Federal Rule of Civil Procedure 8(a)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] In arriving at this findings and recommendations, this Court carefully reviewed and considered all allegations in the 2nd AC. Omission of reference to an allegation is not be construed to the effect that this Court did not consider it. Rather, the Court declines to expend limited resources to reward Plaintiff's persistence in pursuing clearly unrelated claims and/or defendants when he has previously, repeatedly been instructed not to do so.

662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth only as much "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557. Courts are not required to indulge unwarranted inferences. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Violations of Rule 8, at both ends of the spectrum, warrant dismissal. A violation occurs when a pleading says too little -- the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The Rule is also violated, though, when a pleading says *too much*. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir.2011) ("[W]e have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity. Our cases instruct otherwise.") (citing cases); *see also McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges"). Though the prior screening order directed Plaintiff to keep his 2nd AC to no more than twenty (20) pages, the 2nd AC was twenty-one (21) pages in length. However, Plaintiff filed a motion requesting leave to exceed the page limitation by one page (Doc. 30) that has been granted by separate order (Doc. 31).

### 2. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in

different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

As stated in the prior screening orders, the relationship between Plaintiff's allegations against defendants at various facilities is undiscernible. It appears that Plaintiff attempted to plead around this by alleging that the entire time of his incarceration, he has given detailed explanations of all of his medical problems, symptoms and pain to all doctors at every prison he has been housed at. (Doc. 29, 2nd AC, ¶ 22.) However, this is insufficient to show that the medical care he received, or did not receive, at one facility was related to that provided at any other facility. The presence of multiple continuing medical problems, does not make all allegations against every medical provider who treated that inmate related.

Plaintiff was warned in the previous screening order that if his 2nd AC did not comply with Rule 18(a), all unrelated claims would be stricken. Thus, to begin with, all of Plaintiff's claims against Defendants at facilities other than COR (i.e. Defendants Gallagher, Griffin, Greenman, Phy, Kumar, and Meyers from CMC (*id.*, at ¶ 8); Defendants Belavich, Swaby, and Finander from LAC (*id.*, at ¶¶ 43, 70) ; Defendants Bodznhammer, Moghaddam, Brizendine, Teed, Wheeler, and Doe 7 at SAC (*id.*, at ¶¶ 10-12, 55-61, 70-73, 75-77); California Correctional Health Care Services, Corcoran State Prison, and Federal Receiver J. Clark Kelso (*id.*, at ¶¶6, 7, 21, 43)) violate Rule 18 and should be dismissed.

Further, while Defendants Supervisor Clark, CEO Macias, Supervisor McCabe, Dr. Nareddy, Dr. Nguyen, Dr. Yu, Dr. Blanchard, Urbano LCSW, Balisteros LVN, Reynoso LVN, Dava RN, Medical Supervisor Tercero, Supervisor Vasquez RN, Technicians Beltran, E. Gomez, and Salinas, Correctional Officer Guards Banuelos, J. Gomez, Cordova, and Torres, Sergeant Holland, CMOs Zamora and Walker, and Does 6, 8-14 are all at COR (*id.*, at ¶¶ 13-20), Plaintiff has not shown that all of his allegations against each of them are related. Plaintiff's allegations regarding events that took

place at COR are found in paragraphs 43, 46-54, 62-68, 70, 74, 78-87. The allegations in many of these paragraphs are unrelated and violate Rule 18.

The only allegations in the 2ndAC that appear to be related are premised on Plaintiff's cognitive impairment which began in 2012, involving the treatment he received from both medical and correctional staff. Plaintiff's allegations in this regard are found at paragraphs numbered 65-68, 78-84. The only Defendants who are named in these paragraphs are Dr. Nguyen, Dr. Mahoney, Dr. Blanchard, Urbano LCSW, C.O.s Cordova, J. Gomez, and Torres, RN Vasquez, Med. Supv. Tercerro, Sgt. Holland, Technicians Beltran and E. Gomez, LVNs Reynoso and Balisteros, and Does 8-14. The only one of these Defendants that Plaintiff makes allegations against regarding circumstances other than relative to his cognitive impairment is Defendant Nguyen (Doc. 29, 2ndAC, ¶¶63, 64) such that all of Plaintiff's allegations against Defendant Nguyen are properly screened herein.

Thus, all Defendants other than Dr. Nguyen, Dr. Mahoney, Dr. Blanchard, Urbano LCSW, C.O.s Cordova, J. Gomez, and Torres, RN Vasquez, Med. Supv. Tercerro, Sgt. Holland, Technicians Beltran and E. Gomez, LVNs Reynoso and Balisteros, and Does 8-14 should be dismissed from this action. Whether any of Plaintiff's claims against these Defendants are cognizable and do not violate Rule 18 for Plaintiff to be allowed to proceed on are discussed under the applicable standards below.

### D. <u>Statute of Limitations</u>

As stated in the prior screening order, prisoners generally have four years from the date the claim accrues to file their action. *See Wallace v. Kato,* 549 U.S. 384, 387–88 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge). As stated in prior screening orders, April 24, 2013 is the determinative date regarding the timeliness of Plaintiff's claims. Thus, any claims based on events prior to April 24, 2009 are barred.

Despite previously receiving this ruling, Plaintiff persisted in attempting to state claims based on events prior to April 24, 2009 and filed a motion seeking tolling of the statutes of limitations. (Doc. 30.) However, all of the allegations in the 2ndAC involving events prior to April 24, 2009

7

occurred at prisons other than COR.  Thus, since all allegations other than those which occurred at COR violate Rule 18 and are subject to dismissal, Plaintiff's arguments regarding tolling the statute of limitations are disregarded.

### E. Claims for Relief

#### 1. Eighth Amendment

##### a. Serious Medical Needs

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendants' response to the need was deliberately indifferent."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).  For screening purposes, Plaintiff's cognitive difficulties and related disorders are accepted as serious medical needs.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated

the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

Plaintiff alleges that in 2012 he began experiencing cognitive impairments. (Doc. 29, 2ndAC, ¶ 65.) Plaintiff thought they were indicative of mental illness, so he usually told the Mental Health staff about them when he was seen. (*Id.*) In December of 2012, Plaintiff was seen by Dr. Karan (not named as a Defendant in this action) and Dr. Karan addressed his cognitive impairments and ordered an MRI of the brain which revealed damage to the front lobe of Plaintiff's brain. (*Id.*) Plaintiff states that Dr. Karan was the only one who tried to help him. (*Id.*) Thereafter, on June 4, 2013, Plaintiff was seen by Plaintiff and Doe 8 had difficulty understanding each other and Doe 8 construed Plaintiff's difficulty with communication as being uncooperative. (*Id.*) Plaintiff attempted to communicate with Doe 8 by writing notes to a nurse who read them to Doe 8, but Doe 8 "made no effort to accommodate problem, ended video conference." (*Id.*) On September 3, 2013, Plaintiff saw Doe 8 by video again and encountered the same difficulties. (*Id.*) Plaintiff alleges this amounted to indifference by Doe 8. (*Id.*)

Plaintiff's allegations fail to state a cognizable claim against Doe 8 as he has failed to show that Doe 8 ever understood Plaintiff's communications to have understood the medical issues Plaintiff was presenting with to have acted deliberately indifferent thereto.[2] Thus, Doe 8 should be dismissed.

---

[2] Whether this was a duty of Doe 8 as a physician, or of the facility to facilitate communication between impaired inmates and their physicians is discussed under the subsequent section regarding Plaintiff's claims under the Americans with Disabilities Act ("ADA").

9

Regarding Dr. Nguyen, Plaintiff's alleges that from July 11, 2012 to February of 2013, Plaintiff submitted "over 30 sick call slips enumerating all medical problems, saw RNs for each, who set M.D. appts. [sic]. . . . Saw Dr. Nguyen 7-10 times and gave lists most times he made copy, but never addressed, only renewing Tylenol, no exams" (emphasis in original). Plaintiff's allegations against Defendant Nguyen in paragraph 64 of the 2nd AC allege that "Dr. Nguyen was main problem, always refusing to address listed problems, always saying submit sick slips as if [sic] had not. Later RNs would call him crazy." From October 2012 to the end of 2013, Plaintiff alleges he saw Dr. Nguyen "countless times about all, he failed to remedy anything, only renewening [sic] Tylenol. Ignored list & notes, just copied and/or glanced." (*Id.* at ¶67.) Plaintiff gives the following laundry list of "all conditions" that he gave to various medical providers as:  pain: feet, ankles, lower back, neck, shoulders, wrists, numbness in hand, nasal 80% block, deviated septum, cotton blankets needed, new glasses [w/transitional lenses due to light sensitivity] as current are 10 years old, replacement custom insoles, cervical pillow already ordered, cognitive impairments, migraines, ENT, ortho, dermatologist, optometrist, pain, physical therapy, bladder, rashes, bumps on shin, asthma, bleeding lips, ringing ears, all pre-existing." (*Id.* at ¶62.) Plaintiff further alleges that on September 3, 2013, a neurologist RN wrote a note to Plaintiff indicating he "had a stroke, that neurologist needs a face-to-face appointment due to communication problem; but never happened. Nguyen; neurologist, 602s, AAA failed to investigate, determine cause [] symptoms." (*Id.* at ¶68.)

These are Plaintiff's only allegations against Dr. Nguyen. Despite prior screening orders repeatedly directing Plaintiff to be specific as to his allegations against a given defendant, these allegations do not meet the first prong of a claim under the Eighth Amendment for deliberate indifference to a serious medical need against Dr. Nguyen as they are not specific enough to establish the existence of a specific serious medical need that Plaintiff feels Dr. Nguyen knew of and acted deliberately indifferent to. Alleging that one gave a laundry list of ailments to a physician and then alleging that the physician did nothing about them lacks specificity to state a facially plausible cognizable claim. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969. Thus, this claim against Dr. Nguyen should be dismissed.

Plaintiff's next grouping of allegations begins with events that began in July of 2012 against Dr. Mahoney, Dr. Blanchard, Urbano, LCSW, and Doe 9. (Doc. 29, 2ndAC, ¶¶ 78, 79.) In this segment, Plaintiff alleges that he was suicidal, reported it, and was placed in a crisis bed on suicide watch which he was in and out of a few times in July. (*Id.*) Plaintiff next alleges "no treatment, cognitive symptoms declined; ignored." (*Id.*) Plaintiff alleges he gave a list of his symptoms to Urbano, LCSW, Doe 9, and Dr. Blanchard, but that "they ignored, symptoms continued: sleep 16-18 hours; memory problems; lose train thought frequent; sense time off; difficult get on/stay on task; lack focus; speech slow (3-4 words min.); writing initially incoherent requiring 3-5 drafts to eliminate incoherencies, 2-3 hours per page, per draft; registration bad, people talk, only half registers; reading bad, 6-9 times sentence/passage to register; confused a lot; process info bad; & more." (*Id.*) Plaintiff then alleges that from July 2011 to present, he "repeated symptoms in writing several times, letters, 602s, etc., to Drs. Mahoney, Blanchard, and to Urbano and John Doe 9. All ignored, fail to address, treat, investigate definititively [sic] cause/cure. Further suffer. All read, discrimination, daily activities impacted." (*Id.*)

The symptoms that Plaintiff alleges he repeated in writing to Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 all appear to relate to his diminishing cognitive abilities and, at the pleading stage, are leniently construed to amount to a serious medical need. Plaintiff's allegations that, despite his repeatedly submitting his symptoms in writing, letters, 602s and the like, Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 did nothing to treat his cognitive problems, state cognizable claims against Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Plaintiff also alleges that from September of 2012 through August of 2013, despite orders existing for him to receive them LVNs Reynoso, Balisteros, and Does 10-14 variously denied him medication for his migraines and/or denied him his inhaler when he was having difficulties with his asthma. This probably states cognizable claims against LVNs Reynoso, Balisteros, and Does 10-14. Further, Plaintiff is probably able to state cognizable claims against Supervisors Vasquez and Tercero because he alleges that they were medical supervisors and appeals liaisons to ensure that inmates received proper medical care.

However, Plaintiff's allegations do not show any relation between these allegations and those against Dr. Mahoney, Dr. Blanchard, Doe 9, and Urbano LCSW for deliberate indifference to Plaintiff's serious medical need of his cognitive condition that were just previously discussed and found to be cognizable. As previously discussed, Rule 18 prohibits Plaintiff from proceeding against unrelated Defendants on these unrelated claims in this action. Thus, Plaintiff should be allowed to proceed on his claims under the Eighth Amendment against Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 for deliberate indifference to Plaintiff's serious medical needs, but LVNs Reynoso and Balisteros, Supervisors Vasquez and Tercero, and Does 10-14 and Plaintiff's claims against them are unrelated and should be stricken from this action.[3]

### b. Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir. 1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (8th Amendment excludes from constitutional recognition de minimis uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is

---

[3] Nothing in this order should be construed to prohibit Plaintiff from filing a separate action against Defendants LVN Reynoso, LVN Balisteros, Vasquez, Tercero, and LVN Does 10-14 on these claims if he so desires. If Plaintiff chooses to file a separate action on these claims they will be subject to screening under 28 U.S.C. § 1915A(a).

evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted).

Plaintiff alleges that on March 19, 2014, Guards Cordova and Torres were escorting Plaintiff to the law library when they assaulted Plaintiff and shoved him into the wall and a metal table as they were frustrated by Plaintiff's disability. (Doc. 29, 2ndAC, ¶ 83.) Guard J. Gomez then joined Cordova and repeated the acts against Plaintiff, which caused Plaintiff to sustain bruises. (*Id.*) Plaintiff alleges these three Defendants ransack his cell when he is out of it, steal various of his items, break items, and tamper with his food. (*Id.*) While the allegations regarding the stealing, breaking, and tampering with various of Plaintiff's items is not cognizable as discussed subsequently herein under the Due Process section, Plaintiff has stated a cognizable claim against Guards Cordova, Torres, and J. Gomez for using excessive force when they shoved him into the wall and metal table. These allegations are related to Plaintiff's allegations against Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 since premised on Plaintiff's diminished cognitive function.

Thus, Plaintiff should be allowed to proceed on his claims under the Eighth Amendment for excessive force against Guards Cordova, Torres, and J. Gomez.

### c. Conditions of Confinement

Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137. Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d at 1246. While prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health." *LeMaire*, 12 F.3d at 1456. Conditions of confinement, however, constitute cruel and unusual punishment "only when they have a mutually enforcing effect

1 that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."
2 *Wilson*, 501 U.S. at 304. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel
3 and unusual punishment when no specific deprivation of a single human need exists." *Id*.

4      Plaintiff alleges that from September/October of 2013 to the present, despite being aware of his
5 cognitive disorder, Guards Cordova, J. Gomez, and Torres "frequently fail to wake" Plaintiff when
6 breakfast/lunch is served, but wake him when they are picking up the trays. (Doc. 29, 2ndAC, ¶ 81.)
7 Plaintiff also alleges that at other times they falsely document that Plaintiff received a tray and
8 document that Plaintiff refused whatever it was that they came to offer him. (*Id.*)  Plaintiff alleges that
9 "many times [these Defendants use] sign language/gestures to say at meal time, "talk or no food," then
10 deny food and that he is denied food 3 to 4 times weekly. (*Id.*)  Plaintiff also alleges that these three
11 Defendants deceive other staff into thinking that Plaintiff is able to speak normally (which he cannot),
12 and so "influence others to deny" Plaintiff "meals, appointments, services, etc." (*Id.*)  Not receiving
13 food 3 to four times a week from September/October of 2013 to the date that Plaintiff filed this action
14 constitutes cruel and unusual punishment.  Plaintiff thus states a cognizable claim against Guards
15 Cordova, J. Gomez, and Torres under the Eighth Amendment, which he may pursue in this action
16 without violating Rule 18.

17      Thus, Plaintiff should be allowed to proceed on his claims under the Eighth Amendment
18 regarding the conditions of his confinement against Guards Cordova, Torres, and J. Gomez.

### 2. Inmate Appeals

20 The Due Process Clause also protects prisoners from being deprived of liberty without due
21 process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for
22 deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which
23 the protection is sought.  "States may under certain circumstances create liberty interests which are
24 protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Liberty
25 interests created by state law are generally limited to freedom from restraint which "imposes atypical
26 and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

27 "[A prison] grievance procedure is a procedural right only, it does not confer any substantive
28 right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v.*

*Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, Plaintiff's allegations that Defendant Sgt. Holland was aware and thus liable for malfeasance by correctional officers via Plaintiff's letters and inmate grievances does not state a cognizable claim. However, Plaintiff may be able to state a cognizable claim under the Eight Amendment for deliberate indifference to his serious medical needs against those medical personnel who were involved in reviewing his inmate appeals. If Plaintiff states a cognizable claim against a defendant for deliberate indifference to his serious medical needs, he may also be able to state a cognizable claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue. All of Plaintiff's claims against medical providers based on Plaintiff having written to them via letters, 602s and the like have been previously addressed under the section on deliberate indifference claims under the section discussing the Eighth Amendment.

### 3. Americans with Disabilities Act ("ADA")

The United States Supreme Court has determined that Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12131 *et seq.*, which prohibits "public entities" from

discriminating against individuals with disabilities because of their disability, applies to state prisons and prisoners. *See Pennsylvania Dept. Of Corrections v. Yeskey*, 524 U.S. 206 (1998) ("the [ADA's] language unmistakably includes State prisons and prisoners within its coverage"). A plaintiff states a cause of action under Title II of the ADA where he alleges that "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021 (9th Cir. 2010). The ADA does not provide a remedy for inadequate medical treatment of a disability. *Simmons*, 609 F.3d at 1022. Further, while "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act," *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002), a state official may be sued in his or her official capacity under the ADA, *Mirand B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003).

Under the heading of "ADA Violations" Plaintiff details allegations against: Guard Banuelos for discarding his T.V. and against Dr. Blanchard and Supervisors Vasquez and Tercerro for failing to rectify the situation once they were aware of it via Plaintiff's letters and inmate grievances (Doc. 29, 2ndAC, ¶ 81); Guards Cordova, J. Gomez, and Torres for failing to wake him when they served meals and then for waking them as they were gathering food trays only to taunt him as they removed the full food tray, they would tell him "talk or no food" and would then deny him any food, and that they would deceive other staff including psych that Plaintiff could speak normally to influence others to deny Plaintiff meals, appointments, and services and that he alerted Sgt. Holland of these instances via letters and inmate grievances (*id.* at ¶ 82); that in route to the law library one day, Guards Cordova and Torrez became frustrated by Plaintiff's disability and shoved him against a metal table and wall and then Guards Gomez and Cordova repeated the assault, causing Plaintiff to sustain bruises and that Sgt. Holland was alerted of these actions via Plaintiff's letters and inmate grievances and yet Plaintiff's requests to be moved to another unit were ignored and the guards continued to ransack his cell, steal

and break Plaintiff's personal items, and tamper with Plaintiff's food (*id.* at ¶ 83); and that in January 2013, Technician Salinas repeatedly denied Plaintiff's requests for access to his medical records and ADA assistance in reading/understanding his files in preparation for filing this action and that by his letters and inmate grievances, Plaintiff alerted their supervisors, Technicians Beltran and E. Gomez who failed to correct and ignored the situation (*id.* at ¶ 84).

Only the final set of these allegations based on Plaintiff's mental disabilities and the denial of assistance he needed to assist in his reading and understanding of his medical records comes close to stating a claim under the ADA for exclusion from services, programs, and/or activities. However, Plaintiff has not stated any allegations to show that reading and understanding his medical records and how they impact his claims in an action under § 1983 was a service, program, or activity that other inmates had access to, but that Plaintiff was denied because of his disability. Thus, Plaintiff does not state a cognizable claim for violation of his rights under the ADA based on a lack of assistance in reading and understanding his medical records.

Plaintiff also alleges that he was unable to communicate with and so unable to receive treatment from the neurologist during the video exams on January 4, 2013 and September 3, 2013 and that on September 3, 2013, a neurologist RN wrote a note to Plaintiff indicating that Plaintiff had a stroke and that the neurologist needed a face-to-face appointment to examine Plaintiff and that Dr. Nguyen was aware of this need, but failed to investigate or take steps to rectify it. (*Id.* at ¶¶ 66-68.) Inmates are to have access to medical services. By not providing Plaintiff with the face-to-face exam that the neurologist required to properly assess his condition and provide care and treatment, Plaintiff was denied medical care because of his mental disability. Plaintiff states a cognizable claim under the ADA against Dr. Nguyen.

### 4. *Plata v. Brown*

Plaintiff complains that Defendants fail to comply with the "Plata Plan."[4] Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought

---

[4] The Court assumes Plaintiff is referring to the rulings under *Plata v. Schwarzenegger*, No. C 01-1351 TEH, a class action concerning medical care in California's prisons.

17

1  where there is a pending class action suit involving the same subject matter.  *McNeil v. Guthrie*, 945
2  F.2d 1163, 1165 (10th Cir.1991); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir.1988) (en
3  banc).  "Individual members of the class and other prisoners may assert any equitable or declaratory
4  claims they have, but they must do so by urging further actions through the class representative and
5  attorney, including contempt proceedings, or by intervention in the class action."  *Id.*  Any asserted
6  requests for injunctive relief are therefore dismissed.  If Plaintiff wants to complain about a perceived
7  failure to comply with the order in *Plata*, he may contact the plaintiff's class counsel in *Plata*.[5]

8       **5.     Due Process**

9       Plaintiff alleges that in July of 2012, Guard Banuelos violated his rights to due process by
10 wrongfully discarding Plaintiff's T.V.  (Doc. 29, 2ndAC, ¶ 81.)  However, a state prisoner has no
11 cause of action under 42 U.S.C. sect. 1983 for an unauthorized deprivation of property, either
12 intentional or negligent, by a state employee if a meaningful state post-deprivation remedy for the loss
13 is available.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  California law provides an adequate post-
14 deprivation remedy for any property deprivations.  *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir.
15 1994) (*citing* Cal. Gov't Code §§ 810-895).

16       Thus, Plaintiff fails and is unable to state a cognizable claim for violation of his rights to due
17 process against Guard Banuelos for deprivation of Plaintiff's T.V.  Plaintiff alleges that being without
18 the T.V. caused "suicidal ideation/mental state worsen" and that the T.V. "served as therapy
19 distraction."  (Doc. 29, 2ndAC, ¶ 81.)  Plaintiff further alleges that he notified Dr. Blanchard and
20 Supervisors Vasquez and Tercerro of this circumstance via letters and inmate grievances, but that
21 "they failed to remedy, [sic] issue a 'chrono' for T.V., Plaintiff declined."  These allegations also do not
22 state a cognizable claim Eighth Amendment claim against Dr. Blanchard and Supervisors Vasquez and
23 Tercerro (whom Plaintiff alleges are medical supervisors/appeals liasions) to have been aware that a
24 T.V. was medically necessary for Plaintiff's mental condition.  Further, the two words "Plaintiff
25 declined" indicate that, if they offered to issue the "chrono" for a T.V., Plaintiff refused it.

---

[5] Counsel for the plaintiff class in *Plata* is Donald H. Specter at the Prison Law Office, General Delivery, San Quentin, CA 94964.

Likewise, Plaintiff's allegations that Guards Cordova, Torres, and Gomez ransack his cell when he is out of it, steal various of his items, break items, and tamper with his food (*id*. at ¶ 83), does not state a cognizable due process claim.

### 6. California Tort Claims Act

Under the California Tort Claims Act ("CTCA"), a plaintiff may not maintain an action for damages against a public employee, such as in a negligence or medical malpractice action, unless he has first presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. *See* Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). In pleading a state tort claim, plaintiff must allege facts demonstrating that he has complied with CTCA's presentation requirement. *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1243-44 (2004). Failure to allege compliance constitutes a failure to state a cause of action and will result in dismissal of state law claims. *Id.* Though previously, repeatedly notified of this requirement, Plaintiff has failed to state any allegations to show his compliance with the CTCA's presentation requirement. Thus, Plaintiff's claims under California law are properly dismissed.

## III. Conclusion and Recommendation

The Court finds that Plaintiff's 2nd AC states the following cognizable claims that do not violate Rule 18 upon which he should be allowed to proceed as follows: his claims under the Eighth Amendment for deliberate indifference of Plaintiff's serious medical needs against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9; his claims under the Eighth Amendment for excessive use of force and regarding the conditions of his confinement against Defendant Guards Cordova, Torres, and J. Gomez; and his claims under the ADA against Dr. Nguyen in his official capacity. All other claims and Defendants should be dismissed.

Plaintiff was previously provided with the legal standards applicable to his federal claims and given leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Further leave to amend as to the federal claims is not warranted

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action for damages proceed on Plaintiff's Second Amended Complaint

19

on the following claims:

    a.    against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9 for deliberate indifference of Plaintiff's serious medical needs in violation of the Eighth Amendment;

    b.    against Defendant Guards Cordova, Torres, and J. Gomez for excessive use of force and regarding the conditions of his confinement in violation of the Eighth Amendment; and

    c.    against Dr. Nguyen in his official capacity for violation of Plaintiff's rights under the ADA; and

2.    All other claims and Defendants should be dismissed for either Plaintiff's failure to state cognizable claim or violation of Rule 18 as previously discussed herein.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within 30 days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 15, 2014**                                        **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE