1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KING MWASI, | ) Case: 1:13-cv-00695-DAD-JLT (PC) |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS FOR** |
| v. | ) **CASE TO PROCEED ON  CERTAIN CLAIMS AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED** |
| CORCORAN STATE PRISON, et al., | ) **(Doc. 59)** |
| Defendant. | ) **30 DAY DEADLINE** |

Plaintiff's Third Amended Complaint ("TAC") is before the Court for screening.  (Doc. 59.) The Court granted Plaintiff leave to file the TAC for the express purpose of showing he complied with the California Tort Claims Act.[1]  (Doc. 49, p. 2.)  Despite this, Plaintiff *did not state any* allegations pertaining to his efforts to comply with the CTCA in the TAC.  Thus, the Court recommends that all claims under state law in the TAC be **DISMISSED** with prejudice.

///

---

[1] Findings and Recommendations, screening the Second Amended Complaint issued, recommending that Plaintiff be allowed to proceed on his claims against various Defendants under the Eighth Amendment.  (Doc. 32.)  Plaintiff filed objections stating he forgot to allege compliance with the CTCA and sought leave to do so, upon which the Court granted his motion to amend.  (Doc. 49.)

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. Findings

### A. Third Amended Complaint

Plaintiff's TAC is prolix, verbose, disjointed, and convoluted, though not quite as difficult to understand as his prior pleadings. Plaintiff is currently confined at the California State Prison in Corcoran, California ("CSP-Cor"), where the events occurred. Plaintiff's writing style is difficult to interpret and is peppered with words that have had lines drawn through them -- presumably as a result of Plaintiff's editing efforts.[2] Plaintiff names the following 32 prison personnel as Defendants in this action:  Doctors T. Blanchard, Mahoney, Teresa Macias, Conall McCabe, Nareddy, Huu Nguyen, Yu, Wayne Ulit, Asela P. Jumao-as, and Zuckerman; Licensed Clinical Social Workers ("LCSW") Urbano and D. Prince; Registered Nurses ("RN") Dava and Laura Vasquez; Licensed Vocational Nurses ("LVN") Reynoso and E. Teran; Medical Appeals Coordinator J. Tercerro; Appeals Chiefs J. Walker and Lori Zamora; "SSA"[3] S. Russell and Karen Cribbs;  Correctional Counselors II ("CCII")/Appeals Coordinators D. Goree and A. Pacillas;  Correctional Guards ("C/O") E. Banuelos, S. Cordova, J. Gomez, Scalia, and E. Torres; Sergeants N. Holland and Espinosa; California Correctional Health Care Services; Corcoran State Prison; and Federal Receiver J. Clark Kelso as well as Does 1-20.

Generally, Plaintiff complains of events, which occurred from June of 2011 to the date that he filed the TAC, which he alleges show both that he was not provided adequate care and/or treatment for

---

[2] All quotes of Plaintiff's allegations are replicated verbatim and without effort at correction.  However, the Court presumes that Plaintiff intended to redact the words that have been lined out lines, so does not duplicate these words.
[3] The Court does not know what Plaintiff intended the initials "SSA" next to these names mean, but from Plaintiff's allegations, it appears these individuals had something to do with processing and/or handling of his inmate appeals. (*See* Doc. 59, pp. 1-3.)

1  multiple medical conditions and that correctional staff subjected him to unconstitutional conditions of

2  confinement and excessive force.

3       Though a number of Plaintiff's allegations do not state cognizable claims, he has stated some

4  cognizable claims, which are sufficiently related for Rule 18 purposes (discussed in greater detail

5  below) since premised on his cognitive difficulties, upon which he should be allowed to proceed.

6  However, the Court recommends that further leave to amend should not be granted, because the Court

7  has given him the applicable legal standards three times with opportunities to amend and over three

8  years to do so.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).  It is time for this case to

9  move forward.

10      **B.  Pleading Requirements**

11           **1.  Federal Rule of Civil Procedure 8(a)**

12      The TAC must contain "a short and plain statement of the claim showing that the pleader is

13  entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair

14  notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz*, 534 U.S. at

15  512.  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."

16  *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint

17  may not supply essential elements of the claim that were not initially pled."  *Bruns v. Nat'l Credit*

18  *Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268

19  (9th Cir. 1982).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

20  court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

21  state a claim upon which relief may be granted."  28 U.S.C.  § 1915(e)(2)(B)(ii).

22      Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

23  cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S.

24  662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must set

25  forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*,

26  556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual allegations are accepted as true, but legal

27  conclusions are not.  *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

28  2009); *Twombly*, 550 U.S. at 556-557.  Courts are not required to indulge unwarranted inferences.

*Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Violations of Rule 8, at both ends of the spectrum, warrant dismissal.  A violation occurs when a pleading says too little -- the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).  The Rule is also violated when a pleading says *too much*.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir.2011) ("[W]e have never held -- and we know of no authority supporting the proposition -- that a pleading may be of unlimited length and opacity. Our cases instruct otherwise.") (citing cases); *see also McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges").

Though the TAC is long, not chronologically presented, and prolix, the Court can discern Plaintiff's allegations against a given defendant, or group of defendants by reference to specific paragraph numbers -- which is how the Court analyses Plaintiff's claims here.

### 2.  Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

As stated in the prior screening orders and the Findings and Recommendations on the SAC, the

4

relationship between Plaintiff's allegations of his numerous medical issues is indiscernible other than that he seems to feel the care he received for all of them has been deficient.  It appears that Plaintiff once again attempted to plead around Rule 18 by repeatedly alleging that he told medical defendants about his litany of medical problems.  (*See eg.* Doc. 59, ¶¶ 18, 19, 20, 23, 24, 26, 33.)  However, as stated in prior orders this is insufficient to show that claims relating to the medical care he received, or did not receive, from one medical condition to the next is related for Rule 18 purposes.  The presence of multiple continuing medical conditions, does not make all allegations against every medical provider who treated Plaintiff related.

The Court warned Plaintiff that his pleadings must comply with Rule 18(a) and that all unrelated claims would be stricken.  Further, the order which granted Plaintiff leave to file the TAC specifically prohibited Plaintiff from changing the nature of his claims under federal law in the SAC that were previously found cognizable, which were all based on Plaintiff's cognitive impairment that began in 2012 and involved the treatment he received from both medical and correctional staff.  (*See* Doc. 49, p. 2; Doc. 32, pp. 6-7.)  That order even provided Plaintiff with an extra copy of the SAC as well as the Findings and Recommendations which screened it and indicated that "Plaintiff would, in fact, do well to duplicate his allegations from the Second Amended Complaint upon which his federal claims were found cognizable -- i.e. under the Eighth Amendment for deliberate indifference of Plaintiff's serious medical needs against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Doe 9; his claims under the Eighth Amendment for excessive use of force and regarding the conditions of his confinement against Defendant Guards Cordova, Torres, and J. Gomez; and his claims under the ADA against Dr. Nguyen in his official capacity." (*Id.*)  Rather than comply with the order, Plaintiff persisted in the TAC to assert a litany of shortcomings by medical staff for what appears to be every medical appointment and/or encounter he had with any medical personnel from 2011 to the filing of the TAC.  As discussed below in the section on claims under the Eighth Amendment, most of these are not related for purposes of Rule 18 and should be dismissed.  Only Plaintiff's claims which are based on his cognitive defect which requires him to communicate with others in writing are related for purposes of Rule 18.

### 3.  <u>Linkage Requirement</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights to provide notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). Likewise, every act or omission which Plaintiff alleges violated his civil rights must be linked to a government actor to be actionable. To this end, paragraphs number 38, 40, 41, 42, and 47 of the TAC do not provide basis for any cognizable claims since they are not linked to any defendant(s). Further, though Plaintiff names Does 1-20, he only states factual allegations against one in the TAC -- "Nurse John Doe 1."[4] (Doc. 59, ¶ 19.) Plaintiff also names guard Banuelos as a defendant, but fails to link this guard to any of his factual allegations. Thus, guard Banuelos and all Doe defendants other than "Nurse John Doe 1" should be **DISMISSED** based on Plaintiff's failure to link them to any of his factual allegations.

### 4. **Receiver J. Clark Kelso**

Plaintiff named Receiver J. Clark Kelso as a defendant in this action. As a federal receiver, J. Clark Kelso should be dismissed as he is entitled to quasi-judicial immunity.[5]

---

[4] Plaintiff's allegations against Nurse John Doe 1 do not state a cognizable claim for the reasons discussed under the standards for violation of the Eighth Amendment below.

[5] This doctrine is also referred to as "derivative judicial immunity." *See New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir.1989). The Ninth Circuit noted that other circuits "have held uniformly that state court-appointed

Quasi-judicial immunity is derived from the long-recognized common law doctrine of judicial immunity. *In re Castillo*, 297 F.3d 940, 947 (9th Cir.2002). Partly to promote the use of the appellate process, acts performed by judges that relate to the judicial process are immune from attack. *Id.* Quasi-judicial immunity is immunity that extends to non-judicial officers for "claims relating to the exercise of judicial functions." *Id.*, quoting *Burns v. Reed*, 500 U.S. 478, 499, 111 S.Ct. 1934 (1991). In other words, quasi-judicial immunity protects non-judicial officers because their decisions are the functional equivalent of a judge and involve considerable exercise of discretion. *Antoine v. Byers & Anderson*, 508 U.S. 429, 436, 113 S.Ct. 2167 (1993).

To this end, Kelso was appointed to be the receiver for CDCR's health care system. *See Plata v. Schwarzenegger, et al.*, C01–1351–TEH (N.D.Cal. Jan. 23, 2008) (class action constitutional challenge to the adequacy of medical care provided throughout the California state prison system). Upon Kelso's appointment as receiver in 2008, the district court stated that "[t]he Receivership must continue to maintain its independence as an arm of the federal courts established to take over state operations . . . ." *Id.* at 5. The district court ordered that "[a]ll powers, privileges, and responsibilities of the Receiver, as set forth in the Court's February 14, 2006 Order Appointing Receiver, shall continue in full effect, except as modified by subsequent orders...." *Id.*

In the February 14, 2006 Order Appointing Receiver, the district court ordered that "[t]he Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." *Id.* at 6. Those judicial immunities extend to immunity from suit. *See Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ."); *see also Coleman v. Schwarzenegger*, 2007 WL 4276554 (E.D.Cal. Nov.29, 2007) (holding that a receiver who was "imbued with the power and authority to act in the name of the Court as the Court's officer" had judicial immunity). The two primary exceptions to absolute judicial immunity are where the judge's

---

receivers are entitled to absolute immunity" on the premise that "receivers are court officers who share the immunity awarded to judges." *Id.*, quoting *Kermit Const. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 2 (1st Cir.1976).

action is "not taken in the judge's judicial capacity" and "though judicial in nature, is taken in the complete absence of all jurisdiction." *Id*. at 11–12.

In the instant case, Plaintiff's allegations solely attack Kelso for sending a "non-sequitur reply" and failing to act when Plaintiff sent him a letter.  (Doc. 59, ¶ 29.)  There is no allegation to support or even imply that Kelso acted outside of his appointed judicial capacity or "in the complete absence of all jurisdiction."  Accordingly, the Court finds that Kelso is entitled to quasi-judicial immunity and should be **DISMISSED**.

### 5. <u>Eleventh Amendment Immunity</u>

Plaintiff also improperly names the CSP-Cor and California Correctional Health Care Services as Defendants in this action.  Plaintiff may not proceed against a state prison or against a department of state services in this action as they are immune from suit.

The Eleventh Amendment prohibits federal courts from hearing suits brought against an un-consenting state.  *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *see also Seminole Tribe of Fla. v. Florida*, 116 S.Ct. 1114, 1122 (1996); *Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991).  The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  *See Natural Resources Defense Council v. California Dep't of Tranp.*, 96 F.3d 420, 421 (9th Cir. 1996); *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989).

"Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." *Brooks*, 951 F.2d at 1053 (citations omitted).  "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief is legal or equitable in nature." *Id.* (citation omitted).  Because CSP-Cor and California Correctional Health Care Services are part of the California Department of Corrections, which is a state agency, both entities are entitled to immunity under the Eleventh Amendment and should be **DISMISSED**.

6. **Supervisory Liability**

Plaintiff appears to seek liability for a number of Defendants who hold supervisory positions. Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Liability by a supervisor for "knowledge and acquiescence" in subordinates' wrongful discriminatory acts is likewise not cognizable. *Id.* "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

To state such a claim, a plaintiff must allege facts that show supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). An unconstitutional policy cannot be proved by a single incident "unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427 (1985). In this instance, a single incident establishes a "policy" only when the decision-maker has "final authority" to establish the policy in question. *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986).

Further, "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true and if condoned by [supervisors] could be the basis for some inference of wrongful intent on [the supervisor's] part." *Iqbal*, 556 U.S. at 683. To this end, the Ninth Circuit has held that, where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based on the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). A fundamental premise of this form of liability requires that the actions or inaction by subordinate staff amount to a cognizable claim for

9

violation of a plaintiff's constitutional rights and that the supervisorial defendant had knowledge of all such conduct.

It is under this rubric that Plaintiff's allegations against each named supervisory defendant must be analyzed. Thus, Plaintiff's allegations against supervisory defendants are discussed under the legal standards applicable to the actions of their subordinates upon which Plaintiff seeks to impose supervisory liability.

## C.  Claims for Relief

### 1.  Eighth Amendment

#### a.  Serious Medical Needs

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). As stated in the prior Findings and Recommendations on Plaintiff's SAC, for screening purposes, Plaintiff's cognitive difficulties and related difficulties, where so identified, are accepted as serious medical needs.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be

aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122. More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

### i. **Dr. Nareddy**

Plaintiff alleges that he saw Dr. Nareddy[6] on 7/21/11, 8/30/11, 10/12/11, 10/25/11, and 10/31/15 and that, at each of these appointments, Plaintiff told him of all of his medical conditions listed in paragraph 23 of the TAC, to wit:

   a) Feet -- chronic pain severe (5-7) mainly walking . on ortho & podiatrist caseloads years previous prisons, abnormalities, difficult walk, etc. need ortho apt., and replaced custom-molded insoles. Tylenol ineffective.

   b) Ankles -- chronic pain L ankle 406. Occasional swelling. Right ankle, 5-8, popping/clicking, swlling, nerve damage from surgery, itching, numbness. Difficult walk. Ortho repair nerve damage. Motrin, Tylenol ineffective.

   c) R. Knee -- chronic pain (1-3). Clicking noted by ortho.

   d) R. Hip -- chronic, pereriodic pain (2-5). Occasional tweaks, twitches, jerks, clicks, while walking. Need cushion. Hard sleep on it.

   e) Low Back -- chronic pain (6-9). Hard sleep, find position w/little or no pain. Walk hurts. Sometimes, hard out bed, walk, move. Limited range mobility. Certain directions = jolts pain (7-9). Tylenol, Motrin ineffective. Need stronger meds, ortho, hot packs, cushion/pillow between legs. Back.

   f) Wrist/Hands -- R. Wrist, chronic pain (2-3). Occasionally: tingling, certain angles; hard write (pain). L. wrist:  chronic pain (2-3), occasional loss strength

---

[6] Plaintiff's allegations which are linked to Dr. Nareddy are found in paragraphs 23-25, and 27-32 of the TAC.

75-80%.  Nerve damage.  L. Hand: nerve damage, chronic pain (3-6).  Assorted pain, numbness, itching, tingling (mostly top).  Tylenol ineffective.  Need ortho, stronger meds.

g)  Shoulders -- chronic pain (4-8).  Limited range w/o jolts pain, clicking, popping.  Can not sleep left.  Can not rotate, extend, lift w/o pain.  When cuffed behind, pain 4-5, increasing; after 15-20 min..  X-ray/MRI damage.  Tylenol/Motrin ineffective.  Need ortho, surgery, hot packs, stronger meds.

h) Neck -- chronic pain 2-5.  Limited range w/o pain.  X-ray = degenerative.  Hard sleep.

i) Poor circulation -- arms, legs, easily asleep.

j) Rashes -- Unresolved.  Years.  All creams fail.  Thighs, arms, waist.  Itches -- bumps on chin.  Conflicting diagnoses by PCPs (exema, psoriasis).  Need: dermatologist.

k) Sinus/allergies.  Years.  X-ray/scan = 80% blockage.  Deviated septum.  2008, UCSF ENT surgeon Dr. Muir said need surgery.  Never retn'd, by prison.  One nostril always plugged up.  Other partial.  Sometimes both.  Labored breathing.  Sleeping try, 1, 2 times week, both pluged up, forced through mouth, sore throats, can not sleep.  ENT caseload years.  Need ENT, ENT surgeon, RTN UCSF; saline nasal spray, Flonase, nasal rinse kit.

l) Overactive bladder -- frequent urinate; cup fluid = urinate 30 min.  Urinate while sleep.

Plaintiff also alleges that he "explained all injuries from freeway motorcycle accident.  Nerve damage to wrists from excessive force incident 5/31/11."[7]

Plaintiff alleges that Dr. Nareddy failed to issue his "pre-existing meds" and failed to refer him to specialists.  However, Plaintiff also alleges that Dr. Nareddy referred him to be seen by Dr. Karan (not listed as a Defendant) "who supposedly dealt w/ 'high risk patients w/many conditions.'"  Plaintiff's disagreement with the type of specialist(s) Dr. Nareddy referred him to amounts only to a difference of opinion, not to deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Plaintiff then alleges that he "never saw Dr. Karan," which, in and of itself, may have amounted to deliberate indifference if Dr. Nareddy had not followed up on his referral.  However, this allegation is contradicted by Plaintiff's allegations in ¶ 34 where he states that he saw Dr. Karan a few times in September and October of 2012 and that she detected and addressed his cognitive problems by ordering an MRI of his brain which "revealed damage front lobe (Dec. 2010).  She only one trying

---

[7] This allegation is found in ¶24, but is not linked specifically to any defendant by name.  However, since Dr. Nareddy is identified in ¶¶ 23 and 25, leniently construed, the Court assumes that Plaintiff "explained" these injuries to Dr. Nareddy.

12

help." Plaintiff alleges that Dr. Karan subsequently left CDC.  (Doc. 59, ¶ 34.)

Plaintiff then alleges that Dr. Nareddy "did not honor MRI & nerve study orders, ensure receive."  But, in the very next sentence Plaintiff alleges that it took "6 months receive nerve study, for wrists & hands which verified damage from 5/31/11 incident."  (Doc. 59, ¶25.)  This contradiction between Plaintiff's allegations that (1) he never received the nerve study and (2) he received one 6 months after some nonspecific point in time, calls into question the veracity of Plaintiff's allegations. Further, as mentioned above, in the preceding paragraph, Plaintiff states that the MRI Dr. Karan ordered revealed damage -- which shows that the MRI Dr. Karan ordered was performed.  These contradictions cannot be overlooked to impose liability on Dr. Nareddy.

Despite prior screening orders repeatedly directing Plaintiff to be specific as to his allegations against a given defendant, his allegations do not meet the first prong of a claim under the Eighth Amendment for deliberate indifference to a serious medical need against Dr. Nareddy as they are not specific enough to objectively establish the existence of a specific serious medical need that Dr. Nareddy knew of and acted deliberately indifferent to.  As stated in prior orders, alleging that one gave a laundry list of ailments to a physician; that prior physicians had prescribed and/or recommended referral to various specialists, testing, surgical intervention, and medications; and then alleging that the physician in question did nothing about Plaintiff's plethora of ailments lacks specificity to state a facially plausible cognizable claim.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Plaintiff's allegations fail to show that Dr. Nareddy knew Plaintiff had a specific, verified medical condition which required tests and medication, but failed to order them out of deliberate indifference to Plaintiff's condition.  Plaintiff telling Dr. Nareddy that other physicians ordered a test, medication, or  referral to a specialist somewhere in the past, without more, does not equate to knowledge by Dr. Nareddy that Plaintiff's condition, when seen by Dr. Nareddy, required that same test or medication.  Accordingly, Dr. Nareddy and all claims against him should be **DISMISSED**.

## ii.  Dr. Yu

Plaintiff alleges that he saw Dr. Yu[8] on 11/10/11, 11/17/11, 12/1/11, and 12/22/11 and that he

---

[8] Plaintiff's allegations against Dr. Yu are found in paragraphs 26-28 of the TAC.

gave Dr. Yu the "same lists" he had given to Dr. Nareddy.  Plaintiff indicates that he explained Dr. Nareddy's "failures" to Dr. Yu and that Dr. Yu also failed to treat Plaintiff.  Plaintiff alleges that Dr. Yu "never researching file, and always saying he did not have file."  However, in the very next sentence, Plaintiff alleges that Dr. Yu "read nerve study damage and ordered physical therapy, but never pain meds.  Failed order any pre-existing meds.  Meanwhile suffer.  Failed refer to specialists."

These are Plaintiff's most specific allegations against Dr. Yu.  However, they are not sufficient linked to a specific medical condition to show that Dr. Yu knew Plaintiff required tests, medication, and specialist referral, but failed to order them out of deliberate indifference to his condition. Plaintiff's allegations that Dr. Yu read the nerve study and order physical therapy, but did not prescribe pain medication or refer Plaintiff to a specialist, at most, show a difference of opinion between Plaintiff and Dr. Yu regarding diagnosis and treatment of one of Plaintiff's medical condition (which Plaintiff does not identify) which is not cognizable under the Eighth Amendment.  *See Estelle*, 429 U.S. at 107.   Thus, Dr. Yu and all claims against him should be **DISMISSED**.

### iii.  Dava RN

Plaintiff's allegations against Dava RN are found in paragraphs 20, 22, and 31 of the TAC. Plaintiff alleges in paragraph 20 that in June of 2011, over the two weeks following his intake by Nurse John Doe 1[9] he submitted "daily complaints, sick call slips, daily appts." to Dava RN for pain, breathing problems, x-ray/MRI orders," but that Dava RN "failed ensure treatment & meds, inhalers" and "ignored urgency of asthma, acute injuries, further suffer, pain, injuries.  Stopped responding to sick call slips until guard reported her to her supervisor, seeing breathing problems."  In paragraph 31, Plaintiff alleges that it took two weeks for Dava RN to arrange for him to obtain an inhaler and that he had pain and breathing problems.  These allegations state a cognizable claim against Dava RN for deliberate indifference to Plaintiff's asthma in violation of the Eighth Amendment.  However, Plaintiff fails to show how Dava RN's actions pertaining to his asthma condition are related to his claims based on his cognitive difficulties.  Thus, Plaintiff should not be allowed to proceed on this claim against

---

[9]  The time frame of two weeks in June of 2011 was derived from Plaintiff's allegations against Dava RN, which are located in ¶20 and begin by stating "Over next 2 weeks. . . ."  The immediately preceding paragraph, ¶19, contains Plaintiff's allegations against Nurse John Doe 1 which allegedly occurred on June 7, 2011.

Dava RN in this action since to do so would violate Rule 18.

In paragraph 22, Plaintiff alleges that "despite frequent complaints" to Dava RN between 6/11/15 and 8/11/15, it took two months for her to arrange for Plaintiff to "receive medical ordered cotton blankets (allergic prison issue wool), w/o blankets (shelter) 2 months (cold nights)."  These allegations do not rise to the level of a cognizable claim in as much as Plaintiff fails to show that severity of his allergic reaction to wool blankets would rise to the level of a serious medical condition that Dava RN was deliberately indifferent to.

Further, Plaintiff states that all of his allegations in the TAC occurred at CSP-Cor -- which is located in Corcoran, California, in the Central San Joaquin Valley.  Plaintiff's allegations that he was without a blanket and cold at night in from mid-June to mid-August in 2015 are not specific enough as to what temperature Plaintiff was exposed to without a blanket.  However,  judicial notice is taken[10] of the monthly "Climatological Report" for June, July, and August of 2015 from the National Climatic Data Center ("NCDC") which shows the high/low temperatures, measured in Fahrenheit degrees, for Corcoran, California in June of 2015 were 106/54; in July of 2015 were 106/60 ; and in August of 2015 were 108/57.  With such warm temperatures, the Court does no find that Dava RN caused Plaintiff to be exposed to unconstitutionally cold temperatures when she did not get a cotton blanket medically issued to him from June 15, 2015 to August 15, 2015.  This claim is not cognizable.  Thus, Dava RN and all claims against her should be **DISMISSED**.

### iv.  Dr. Nguyen

Plaintiff alleges that he was transferred to another facility in January or February of 2012 and transferred back to CSP-Cor on July 11, 2012.  Plaintiff alleges that between July 11, 2012 and February of 2013, he submitted over 30 sick call slips and several 602s that enumerated all of his medical problems.  Plaintiff alleges that, for each slip/602 he submitted, he saw RNs "who set M.D. appts."  Plaintiff does not identify which physician(s) the RNs set him appointments with for his 602s.

However, Plaintiff does allege that he "cited all problems … cited to Drs. Nareddy and Nguyen."  Yet, as previously discussed, allegations such as these lack specificity to establish a specific

---

[10] Court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.  *See* Fed.Rules Evid.Rule 201, 28 U.S.C.A.; *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (2012).

serious medical need Plaintiff had which Dr. Nguyen[11] knew of and failed to address.  Alleging that one gave a laundry list of ailments to a physician and then alleging that the physician did nothing about them lacks specificity to state a facially plausible cognizable claim.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Plaintiff next alleges that from October of 2012 to November of 2013, he saw Dr. Nguyen at least 8 times and that each time he gave Dr. Nguyen "detailed lists of chronic, unresolved conditions, pain, meds needed, etc." similar to those he gave to Dr. Nareddy and Dr. Yu.  Plaintiff alleges that Dr. Nguyen repeatedly failed to prescribe appropriate meds after Plaintiff explained to him that Tylenol and Motrin were not effective.  Plaintiff alleges that Dr. Nguyen failed to refer him to specialists, failed to thoroughly examine him, and only continued Plaintiff's use of Tylenol.  Plaintiff alleges that he never received physical therapy after the nerve study revealed damage and that Dr. Nguyen failed to act and his pain continued.  Dr. Nguyen made a copy of Plaintiff's list, but did nothing[12]  further.  Plaintiff asserts that the RNs said Dr. Nguyen was "crazy."

All of Plaintiff's allegations against Dr. Nguyen lack specificity to establish the existence of a specific serious medical need that Dr. Nguyen was aware of and acted deliberately indifferent to.  Thus, Dr. Nguyen should be **DISMISSED** from this action.

### v. Dr. Jumao-as

Plaintiff alleges that on January 4, 2013, he saw Dr. Jumao-as[13], a neurologist, via video.  Plaintiff was unable to understand Dr. Jumao-as due to his speech and "registration impairments."  Plaintiff alleges that Dr. Jumao-as construed Plaintiff's inability to understand her as being uncooperative.  Plaintiff wrote a note to the RN who was coordinating the video appointment and she attempted to explain Plaintiff's communication problems to the neurologist and that Plaintiff had had a stroke.  Plaintiff alleges that Dr. Jumao-as "made no effort to accommodate problem; ended video apt."  The RN said that an "in-person" appointment was required, but it never happened.  On September 3, 2013, Plaintiff saw Dr. Jumao-as again by video and experienced the "same problem."

---

[11] Plaintiff's allegations against Dr. Nguyen are found in paragraphs 32, 33, and 37 of the TAC.
[12] This allegation is contradicted by Plaintiff's allegations in paragraph 75 where he complains that Dr. Ulit failed to renew a "DNS (difficult speech) chrono" which had been issued by Dr. Nguyen.
[13] Plaintiff's allegations against Dr. Jumao-as are found in paragraphs 35 and 36 of the TAC.

These allegations do not show that Dr. Jumao-as understood that Plaintiff was having problems understanding and communicating with her.  To the contrary, Plaintiff's allegations that Dr. Jumao-as misconstrued Plaintiff's inability to understand her as uncooperativeness shows that there was a misunderstanding, which went unresolved despite the RN's *attempts* to explain.  A misunderstanding/miscommunication does not equate to deliberate indifference.  Further, while the RN indicated to Plaintiff that an "in-person" appointment was necessary, none of Plaintiff's allegations show that Dr. Jumao-as actually understood Plaintiff's condition/limitations and concurred that a face-to-face appointment was needed.  Further, while Plaintiff alleges that the nurse *attempted* to convey Plaintiff's condition to Dr. Jumao-as, Plaintiff fails to state any allegations to show that Dr. Jumao-as actually understood what the nurse was attempting to convey to have been deliberately indifferent to Plaintiff's condition.   Accordingly, Plaintiff fails to state a cognizable claim against Dr. Jumao-as and she should be **DISMISSED**.

### vi.  Dr. Ulit

Plaintiff alleges that from January of 2014 through December of 2015, he saw Dr. Ulit[14] over ten times including: 1/7/14, 1/30/14, 2/28/14, 3/25/14, 10/27/14, 11/19/14, 12/4/14, 3/11/14, 5/7/15, and 10/22/15.  Plaintiff alleges that he gave Dr. Ulit more detailed and revised lists of his problems, which included everything on the lists he previously gave to Drs. Nareddy, Yu, and Nguyen, in addition to his continuing cognitive problems.  Plaintiff requested referral to respective specialist and "in-person" appointment with a neurologist, stronger pain medications, and explained that his daily activities are severely affected.  Plaintiff alleges Dr. Ulit failed to act on his behalf.  Plaintiff also alleges that Dr. Ulit failed to renew a "DNS (difficult speech) chrono" that Dr. Nguyen previously issued.  Plaintiff alleges that Dr. Ulit was aware of his ongoing cognitive issues, but "failed renew DNS, failed treat, refer specialists despite countless 7362s, appts where requested."  However, this is contradicted by Plaintiff's allegations in paragraph 73, against guards Cordova, Gomez, and Torres that from September of 2013 to July of 2014, these three guards routinely refused to honor a "medical/ADA chrono" to do all communication with Plaintiff in writing.  Plaintiff cannot have it both

---

[14] Plaintiff's allegations against Dr. Ulit are found in paragraphs 39 and 75 of the TAC.

1  ways and fails to state when the chrono expired for Dr. Ulit to have been deliberately indifferent to

2  Plaintiff's plight by not having it renewed.

3      Plaintiff's allegations, like those previously discussed regarding the other physicians, not

4  specific enough to establish the existence of a specific serious medical need that Dr. Ulit knew of and

5  acted deliberately indifferent to.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

6  Thus, Dr. Ulit should be **DISMISSED**.

7      **vii.  Dr. Mahoney, Dr. Blanchard, Urbano LCSW, & Prince, LCSW**

8      Plaintiff alleges that in July of 2012, he was in a mental health crisis bed a "few times."  While

9  there, Plaintiff alleges he gave a list of his symptoms to Dr. Mahoney[15] and that Dr. Mahoney

10  acknowledged and documented them.  Plaintiff also gave the "list of symptoms" to Urbano LCSW,

11  Prince LCSW, and Dr. Blanchard (after Dr. Mahoney left) who all ignored them.  Plaintiff further

12  alleges that his "symptoms continued" which he describes as: "Sleep 16-18 hours; memory problems;

13  lose train thought frequent; sense time off; difficult get on/stay on task; lack focus; speech slow (3-4

14  words min.); writing initially incoherent, require 3-5 drafts to eliminate incoherencies, 2-3 hours per

15  page, per draft; registration bad, people talk, only half register; reading bad, sentence/passage to

16  register; confused a lot; slow process info; & more."

17      Plaintiff alleges that from 2012 to "present" (which is presumed to be the date he signed the

18  TAC), he repeated these symptoms in writing several times via "letters, 602s, etc., 7362s" to Dr.

19  Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW who all ignored him and failed to

20  address, treat, and/or investigate a cause/cure for Plaintiff's cognitive issues.  All these four

21  Defendants did was "read, nod head, do nothing, as unimportant."  Plaintiff alleges that "CCCMS is

22  15 min. welfare check monthly . . . virtually no treatment" and that his suffering continues.  These

23  allegations are specific enough to state a cognizable claim against Dr. Mahoney, Dr. Blanchard,

24  Urbano LCSW, and Prince LCSW for deliberate indifference to Plaintiff's serious medical needs

25  related to his cognitive deficit in violation of the Eighth Amendment.

26      Plaintiff further alleges that in April or May of 2015, Dr. Blanchard and Prince LCSW

27

28  [15] Plaintiff's allegations against Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW are found in paragraphs 44, 46-50, and 52-53.

1  removed Plaintiff from the mental health system despite Plaintiff's 10+ years as a patient with chronic,

2  severe, suicidal, depression knowing this would triggered Plaintiff's abrupt transfer to Pelican Bay

3  State Prison ("PBSP") in retaliation for Plaintiff's 602s and litigation activities.  Plaintiff was in fact

4  transferred to PBSP in June of 2015; staff there acknowledged that it was error by CSP-Cor staff for

5  him to have been transferred to PBSP; and they placed Plaintiff back in the mental system and

6  prescribed medication.  As a result of the wrongful transfer to PBSP, for three weeks in June and July

7  of 2015, Plaintiff completely lost his appetite, took in no food for 12 days, was distressed, had no

8  desire, and had difficulty understanding.  These allegations state a cognizable claim against Dr.

9  Blanchard and Prince LCSW both for deliberate indifference to Plaintiff's serious medical need in

10  violation of the Eight Amendment and for violation of the First Amendment by retaliating against

11  Plaintiff for his engaging in protected conduct.  *See Waitson v. Carter,* 668 F.3d 1108, 1114-1115 (9th

12  Cir. 2012); *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir.2009); *Rhodes v. Robinson*, 408 F.3d 559,

13  568 (9th Cir. 2005).

14  ### viii.  Dr. Zuckerman

15  The entirety of Plaintiff's allegations against Dr. Zuckerman[16] are that he is a "psychiatrist,

16  failed prescribe med severe depression.  Meanwhile suffer debilitating symptoms.  Debilitating

17  cognitive symptoms continue w/o treatment, affecting daily activities."  These general, conclusory

18  allegations need not be accepted since they amount to nothing more that formulaic recitations of

19  liability.  *Iqbal*, 556 U.S. at 678.  Thus, Plaintiff fails to state a cognizable claim against Dr.

20  Zuckerman and he should be **DISMISSED**.

21  ### ix.  LVN Reynoso

22  Plaintiff alleges that from September of 2012 through August of 2013, LVN Reynoso[17]

23  "routinely" denied Plaintiff medication for his asthma, which caused breathing problems.  Plaintiff

24  also alleges that on September 13, 2013 and October 9, 10-12, 2013 he needed his medication for

25  migraines, but LVN Reynoso refused to distribute them to him, which caused him to experience

26  "excruciating pain."  Plaintiff alleges that LVN Reynoso constantly ignored him or skipped him

27

28  [16] Plaintiff's only allegations against Dr. Zuckerman are found in paragraph 53.
[17] Plaintiff's allegations against LVN Reynoso are found in paragraph 55 of the TAC.

altogether.

These allegations, very liberally construed, state a cognizable claim against LVN Reynoso for deliberate indifference to Plaintiff's serious medical needs.  However, this claim is not related to the other claims that Plaintiff will proceed on in this action, which violates Rule 18 and so LVN Reynoso should be **DISMISSED**.

### x.  <u>LVN Teran</u>

Plaintiff alleges that on October 21, 2013, when he had a migraine, LVN Teran[18] denied him his medications at both 4:00 p.m. and 8:00 p.m.  Plaintiff gave her a note explaining his need for the pain medication and that she routinely skips him, but LVN Teran laughed, left, and did not return with his migraine medication.  On October 28, 2013, November 4, 2013, and November 5, 2013, she likewise denied him medication for migraines he was experiencing.   Further, on November 11, 2013, LVN Teran denied Plaintiff his inhaler causing him to experience difficulty breathing.  Plaintiff alleges that from September through December of 2013, LVN Teran displayed a pattern of denying his requests for medication, ignoring him completely, or knocking on his door and then laughing as she ignored his requests.

These allegations, liberally construed, state a cognizable claim against LVN Teran for deliberate indifference to Plaintiff's serious medical needs.  However, this claim is not related to the other claims that Plaintiff will proceed on in this action, which violates Rule 18 and so LVN Teran should be **DISMISSED**.

### xi.  <u>Nurse John Doe 1</u>

In this paragraph, Plaintiff alleges that on June 7, 2011, "Nurse 'John Doe 1'"[19] was an intake nurse who interviewed him upon arrival at CSP-Cor.  Plaintiff alleges that he told this nurse about all of his chronic problems and that four days prior, on June 3, 2011, an M.D. had ordered "x-rays/MRI," but the nurse "failed ensure receive meds & treatment result suffer daily pain, breathing asma problems."  (*Id.*)

Plaintiff's allegations that he told Nurse John Doe 1 about his numerous medical issues and

---

[18] Plaintiff's allegations against LVN Teran are found in paragraph 56 of the TAC.
[19] Plaintiff's only allegations against this "Doe" defendant are found in paragraph 19.  (Doc. 59, p. 3.)

that a doctor had previously ordered tests do not suffice to show that the nurse knew failure to treat any of his conditions "could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm*, 680 F.3d at 1122.  Plaintiff's allegations are not specific enough to show that the nurse's failure to provide treatment upon Plaintiff's arrival at CSP-Cor amounted to anything more than mere "'indifference,' 'negligence,' or 'medical malpractice'" which do not support a claim of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).

Further, Plaintiff fails to state any allegations to indicate that Nurse John Doe 1 had any authority to order medical care and/or treatment to Plaintiff during this intake interview. *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) (When resolving a claim under the Eighth Amendment against individual defendants, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant.") *citing with approval Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party.  One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries.  Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.") Thus, "Nurse John Doe 1" and all claims against him should be **DISMISSED**.

### b. <u>Conditions of Confinement</u>

Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137.  Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d at 1246.  While prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health." *LeMaire*, 12 F.3d at 1456.  Conditions of confinement, however, constitute cruel and unusual punishment "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304.  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

**i.  Guards Cordova, Gomez, & Torres, & Sgt. Holland**

In paragraph 59, Plaintiff alleges that Guards Cordova, Gomez, and Torres were aware of his sleep disorder, that his sense of time was off and he had no clock, and that he frequently overslept. Plaintiff alleges that from September/October of 2013 to July of 2014, he was denied food 3-4 times per week by these three guards.  They would frequently fail to wake Plaintiff when breakfast and lunch were served (these two meals were delivered to inmates together), but would wake and tease Plaintiff when they removed his food tray.  Even when Plaintiff was awake, he alleges these three guards would still skip and/or deny him food, but falsely write that he had received the food tray, as they would grin and tease/taunt Plaintiff.  Plaintiff alleges these three guards did not like Plaintiff's need for written communication and would come to his cell for various purposes, not write the purpose of their contact to communicate with Plaintiff, would walk away and lie by indicating that Plaintiff refused whatever it was that thy had come to his cell for.  Many times, these three guards would use gestures at meal times to indicate that Plaintiff must talk to receive food and would then deny Plaintiff of his food.

In paragraph 65, Plaintiff alleges that, during this same time frame, in order to harass Plaintiff because of his cognitive difficulties, these three guards searched and ransacked his cell every time he exited it, totaling more than thirty times which was highly unusual and atypical.

In paragraph 73, Plaintiff alleges that from September of 2013 to July of 2014, these three guards routinely refused to honor a "medical/ADA chrono" to do all communication with Plaintiff in writing.  Further, in paragraph 76, Plaintiff alleges that around May 10, 2014, Torres issued a false RVR against Plaintiff indicting that Torres verbally told Plaintiff urine testing was needed and that Plaintiff verbally refused.  Plaintiff alleges that Torres never communicated with him in writing regarding any random urine test.  Plaintiff alleges this was an ongoing harassment by Torres because of Plaintiff's communication problems.

In paragraphs 61 and 74, Plaintiff alleges that these three guards deceived other staff into thinking Plaintiff could speak which created confusion and caused Plaintiff to be discriminated against/denied services such as medications and mental health appointments.

In paragraph 60, Plaintiff alleges that he notified Sgt. Holland of the above via letters, 602s,

and 22s but that Sgt. Holland turned a blind eye and tacitly encouraged their misconduct.

These allegations state a cognizable claim for subjecting Plaintiff to unconstitutional conditions of confinement in violation of the Eight Amendment against Guards Cordova, Gomez, and Torres as well as Sgt. Holland.

### c. **Excessive Force**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir. 1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (8th Amendment excludes from constitutional recognition de minimis uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted).

///

### i. **Guards Cordova, Gomez, & Torres, & Sgt. Holland**

In paragraph 63, Plaintiff alleges that on the way to the law library on March 19, 2014, guards Cordova and Torres shoved him against a metal table and wall and that on the way returning to his cell, guards Gomez and Cordova did likewise which left him "with bruises to shin." Plaintiff alleges he did not understand what they said, but "quietly endured." Plaintiff alleges that he wrote letters and 602s to Sgt. Holland and the Ombudsman which were ignored and that his requests to be moved to another unit were likewise ignored. In paragraph 64, Plaintiff alleges that again on the way to the law library, but this time on May 21, 2014, after Plaintiff exited his cell, Torres hit him in the head hard enough to knock off the beanie Plaintiff was wearing.

These allegations state a cognizable excessive force claim against guards Cordova, Gomez, and Torres for the March 19, 2014 incident and against guard Torres for the May 21, 2014 incident. Further, since Plaintiff alleges he wrote letters and 602s to Sgt. Holland on the March 19, 2014 incident, this suffices to state a claim against Sgt. Holland based on his knowledge of and acquiescence in guard Torres' use of excessive force on May 21, 2014. *See Starr*, 652 F.3d 1202.

However, these allegations do not state a claim against Sgt. Holland for the acts of reviewing Plaintiff's 602s on the March 19, 2014 incidents since Plaintiff fails to show Sgt. Holland's acquiescence and prior knowledge. Further, as discussed in greater detail below, actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### 2. **Denial of Property**

In paragraph 66, Plaintiff alleges that on July 16, 2014, guards Espinoza and Vang searched and inventoried Plaintiff's property and then escorted Plaintiff, with his property, to a new housing unit. Plaintiff alleges "property withheld illegally." Plaintiff alleges that, the next day, he attempted to obtain his property from guard Scalia, who refused to give Plaintiff his property. In paragraphs 68 and 69, Plaintiff alleges that from July 17, 2014 to August 21, 2015, despite daily notes to guard Scalia, and "several notes, 22s" to Sgt. Espinosa, Plaintiff's requests for his property were refused. In paragraph 70, Plaintiff alleges that several "psych staff addressed issue to Scalia and Espinosa, explaining and showing court orders, deadlines (instant case)," but that Scalia and Espinosa lied to

them stating that Plaintiff's property was not there despite it being "in plain view 10 yards from cell on floor."  In paragraph 71, Plaintiff alleges that on July 19, 2014, Sgt. Espinosa told psych staff that Plaintiff's property had to be inventoried and ordered his property be returned to guards Cordova, Gomez, and Torres who had it for 10 days.  Plaintiff alleges this was unnecessary as it had already been done prior to his move.  Plaintiff alleges that psyche staff contacted a lieutenant and his property was finally returned to him, but when Plaintiff received his property it was not accompanied by an official inventory list, was in disarray, various of his personal property items were damaged or missing; that his legal papers had been dumped out of their manila envelopes, all of Plaintiff's manila envelopes were missing, and that guards Cordova, Gomez, and Torres carefully searched and read his documents as all evidence against them was missing.  On August 21, 2014, Plaintiff was "moved back to another unit near OG unit."

An unauthorized deprivation of personal property, be it through loss, destruction, or confiscation, does not give rise to a viable claim for relief under the Due Process Clause of the Fourteenth Amendment.  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).  While authorized, intentional deprivations of property are actionable under the Due Process Clause, *see Hudson*, 468 U.S. at 532, n.13; *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), the Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections," *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted).  Thus, Plaintiff's allegations against Cordova, Gomez, Torres, Espinosa, Vang, and Scalia for taking, damaging, or destroying his personal and legal property are not cognizable under § 1983 and all such claims should be **DISMISSED**.

### 3.  Inmate Appeals

The Due Process Clause also protects prisoners from being deprived of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are

protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action.  *Buckley*, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."  *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, Plaintiff's general allegations in paragraph 79 that initially all appeals coordinators would cancel every 602 that he filed for "bogus" reasons, or would schedule interviews and then ignore Plaintiff's written communications, or falsely indicate that Plaintiff waived the interview, or act in other manners that Plaintiff asserts took advantage of his cognitive deficits do not state a cognizable claim under 1983 for the handling of his 602s.

Plaintiff may however, be able to show the elements for a claim under the Eight Amendment for deliberate indifference to his serious medical needs against those medical personnel who were involved in reviewing his inmate appeals if they had the authority to intercede and/or to take corrective action.  If Plaintiff meets his burden of proof as to the elements of a claim against a defendant for

1   deliberate indifference to his serious medical needs, he will likely also be able to meet his burden of

2   proof as to the elements of a claim against defendants with medical training if they reviewed and ruled

3   against Plaintiff in his medical grievances/appeals on that same issue.

4          Further, this Court has found that at least one Appellate Circuit has held that "[o]nce a [non-

5   medical] prison grievance examiner becomes aware of potential mistreatment, the Eight Amendment

6   does not require him or her to do more than 'review [the prisoner's] complaints and verif[y] with the

7   medical officials that [the prisoner] was receiving treatment." *Greeno*, 414 F.3d at 656 citing *Spruill*

8   *v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants cannot "be considered

9   deliberately indifferent simply because they failed to respond directly to the medical complaints of a

10  prisoner who was already being treated by the prison doctor" and if "a prisoner is under the care of

11  medical experts . . . a non-medical prison official will generally be justified in believing that the

12  prisoner is in capable hands.")  This Court concurs with the analysis in *Greeno* and *Spruill*.  Thus, non-

13  medical prison personnel, and lower medical staff such as nurses and/or medical technicians, cannot

14  be held liable for their involvement in processing and/or ruling on inmate appeals for medical issues

15  where the inmate is under the care of a physician for the issues raised.

16         Plaintiff alleges that he "alerted Vasquez & Tercerro" of the issues he complains of against

17  Nurse John Doe 1 and Dava RN via "letters & 602s ignored, failed ensure treatment, emergency,

18  breathing."  (Doc. 59, ¶21.)  As previously discussed, Plaintiff fails to state a cognizable claim against

19  Nurse John Doe 1.  However, liberally construed, Plaintiff's allegations against Dava RN were found

20  to state a cognizable claim, but are unrelated and may not be pursued in this action under Rule 18.

21  Thus, Plaintiff is unable to proceed in this action on claims against Vasquez RN and AC Tercerro

22  based on their involvement in reviewing/processing his letters and 602s in which he complained of the

23  actions/inaction of Nurse John Doe 1 and Dava RN.

24         Plaintiff also alleges that he notified Vasquez RN and AC Tercerro of his issues with both

25  LVN Reynoso and LVN Teran (Doc. 59, ¶57), which are likewise unrelated and may not be pursued in

26  this action under Rule 18.

27         Further, Plaintiff also does not show any basis upon which Vasquez RN and AC Tercerro were

28  physicians and/or authorized/ required to override and/or direct/correct the actions of Dr. Nareddy, Dr.

1   Yu, and Dr. Nguyen since he fails to show that Vasquez RN and/or AC Tercerro.  (Doc. 59, ¶30.)

2   Thus, Vasquez RN and AC Tercerro should be **DISMISSED**.

3          Plaintiff also fails to state a cognizable claim against Defendants Macias, McCabe, Russell,

4   Walker, & Zamora based on their involvement reviewing his "7362s" and "602s" on Plaintiff's

5   allegations against the various Defendant physicians since Plaintiff's only allegations against these

6   Defendants state "Following medical appeals coordinators/reviewers trained to ensure adequate care &

7   remedy problems, aware all problems and failed remedy of all . . . ."  (Doc. 59, ¶57.)  Such allegations

8   lack specificity to establish the existence of a specific serious medical need that Defendants Macias,

9   McCabe, Russell, Walker, & Zamora knew of and acted deliberately indifferent to.  *Iqbal*, 556 U.S. at

10  678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.  Thus, Defendants Macias, McCabe, Russell, Walker,

11  & Zamora should be **DISMISSED** from this action.

12                    **4.   Americans with Disabilities Act ("ADA")**

13         The United States Supreme Court has determined that Title II of the Americans with

14  Disabilities Act, 42 U.S.C. Section 12131 *et seq.*, which prohibits "public entities" from

15  discriminating against individuals with disabilities because of their disability, applies to state prisons

16  and prisoners.  *See Pennsylvania Dept. Of Corrections v. Yeskey*, 524 U.S. 206 (1998) ("the [ADA's]

17  language unmistakably includes State prisons and prisoners within its coverage").  A plaintiff states a

18  cause of action under Title II of the ADA where he alleges that "(1) he is an individual with a

19  disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's

20  services, programs, or activities; (3) he was either excluded from participation in or denied the benefits

21  of the public entity's services, programs, or activities, or was otherwise discriminated against by the

22  public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his

23  disability."  *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021 (9th Cir. 2010).  The ADA does

24  not provide a remedy for inadequate medical treatment of a disability.  *Simmons*, 609 F.3d at 1022.

25  Further, while "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her

26  individual capacity to vindicate rights created by Title II of the ADA or section 504 of the

27  Rehabilitation Act,"  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002), a state official may be

28  sued in his or her official capacity under the ADA, *Mirand B. v. Kitzhaber*, 328 F.3d 1181, 1187-88

1   (9th Cir. 2003).

2          Plaintiff alleges that he was unable to communicate with and so unable to receive treatment

3   from the neurologist, Dr. Jumao-as, during the video exams on January 4, 2013 and September 3, 2013

4   and that a neurology RN wrote a note to Plaintiff indicating that Plaintiff had a stroke and that he

5   needed a face-to-face appointment with the neurologist.  (Doc. 59, ¶¶ 35-36.)  In the following

6   paragraph, Plaintiff alleges that "Oct. 2012 to end 2013, informed Dr. Nguyen countless times about

7   all.  He failed remedy anything.  Ignored lists & notes, just copied them, failed investigate, find cause

8   symptoms."  (*Id.* at ¶ 37.)  However, Plaintiff's allegations regarding him informing Dr. Nguyen

9   "about all" are not specific enough to show that Dr. Nguyen knew of and was deliberately indifferent

10  to Plaintiff's inability to communicate with Dr. Jumao-as -- particularly in light of the fact that

11  Plaintiff complains of being denied medical care by multiple medical providers in the paragraphs

12  preceding paragraph 37.  (*See id.*, at ¶¶18-36.)  Further, Plaintiff fails to state any allegations in the

13  TAC to show that Dr. Nguyen had the authority or means to rectify the difficulty Plaintiff encountered

14  during his video examinations with Dr. Jumao-as.

15         Finally, Plaintiff's allegations that Dr. Jumao-as construed Plaintiff's difficulty with the video

16  exam as being uncooperative do not show that Dr. Jumao-as realized that Plaintiff's cognitive

17  condition was the source of their communication  difficulties to have been required to take corrective

18  action.  Plaintiff fails to state any allegations which show that any other medical personnel was aware

19  of his specific difficulty communicating with Dr. Jumao-as to have been deliberately indifferent to by

20  failing to arrange for a face-to-face examination.

21         Further, though Plaintiff states allegations related to his cognitive deficits upon which he

22  requires written rather than spoken communications, he fails to name or implicate a prison employee,

23  who, in his or her official capacity, is responsible for ensuring that correctional and/or medical prison

24  personnel communicate with Plaintiff in writing because of his cognitive difficulties upon which to

25  base a claim under the ADA.  Thus, Plaintiff fails to state a cognizable claim under the ADA and all

26  such claims should be **DISMISSED**.

27  ///

28  ///

29

1        **5.  _Plata v. Brown_**

2            Plaintiff complains that Defendants fail to comply with the "Plata v. Brown."[20]  As stated in the

3    prior screening orders and findings and recommendations, individual suits for injunctive and equitable

4    relief from alleged unconstitutional prison conditions cannot be brought where there is a pending class

5    action suit involving the same subject matter.  _McNeil v. Guthrie_, 945 F.2d 1163, 1165 (10th

6    Cir.1991); _Gillespie v. Crawford_, 858 F.2d 1101, 1103 (5th Cir.1988) (en banc).  "Individual members

7    of the class and other prisoners may assert any equitable or declaratory claims they have, but they

8    must do so by urging further actions through the class representative and attorney, including contempt

9    proceedings, or by intervention in the class action."  _Id._  Any asserted requests for injunctive relief

10   thereon should be **DISMISSED**.[21]

11                  **6.  California Tort Claims Act**

12           Under the CTCA, a plaintiff may not maintain an action for damages against a public

13   employee, such as in a negligence or medical malpractice action, unless he has first presented a written

14   claim to the state Victim Compensation and Government Claims Board within six months of accrual

15   of the action.  _See_ Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; _Mangold v. California Pub. Utils._

16   _Comm'n_, 67 F.3d 1470, 1477 (9th Cir. 1995).  In pleading a state tort claim, plaintiff must allege facts

17   demonstrating that he has complied with CTCA's presentation requirement.  _State of California v._

18   _Superior Court (Bodde)_, 32 Cal.4th 1234, 1243-44 (2004).  Failure to allege compliance constitutes a

19   failure to state a cause of action and will result in dismissal of state law claims.  _Id._  Though

20   previously, repeatedly notified of this requirement, and _even being granted leave to file the TAC_

21   _specifically on this issue,_ Plaintiff has failed to state _any_ allegations to show his compliance with the

22   CTCA's presentation requirement.  Thus, all of Plaintiff's claims under California law should be

23   **DISMISSED** with prejudice**.**

24           **D.  Doe Defendants**

25           Plaintiff also lists "Does 1-20" as defendants in this action.  (Doc. 59, p. 1.)   The Federal Rules

---

27   [20] The Court assumes Plaintiff is referring to the rulings under _Plata v. Schwarzenegger_, No. C 01-1351 TEH, a class action concerning medical care in California's prisons.

28   [21] If Plaintiff wants to complain about a perceived failure to comply with the order in _Plata_, he may contact the plaintiff's class counsel in _Plata_, Donald H. Specter, Esq. at the Prison Law Office, General Delivery, San Quentin, CA 94964.

1   of Civil Procedure include no provision "permitting the use of fictitious defendants." *McMillan v.*

2   *Department of Interior*, 907 F.Supp. 322, 328 D.Nev. 1995), *aff'd*, 87 F.3d 1320 (9th Cir. 1996), *cert.*

3   *denied*, 519 U.S. 1132 (1997); *see also Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191

4   (9th Cir. 1970).   "As a general rule, the use of 'John Doe' to identify a defendant is not favored."

5   *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Nonetheless, a plaintiff must be afforded an

6   opportunity to identify the unknown defendants through discovery, unless it is clear that discovery will

7   not reveal their identities or the complaint must be dismissed for other reasons.  *Id.*  However, after

8   more than three years, Plaintiff fails to state any cognizable claims against any person whose identity

9   is unknown.  Thus, all Doe Defendants should be **DISMISSED.**

10        **E.  Declaratory Relief**

11        Among other things, Plaintiff seeks a declaration that his civil rights have been violated.  (Doc.

12   59, p. 21.)  "A declaratory judgment, like other forms of equitable relief, should be granted only as a

13   matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood*

14   *Village*, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a

15   useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

16   afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*,

17   759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a

18   verdict in favor of plaintiff, that verdict will be a finding that plaintiff's constitutional rights were

19   violated.  Accordingly, a declaration that Defendants violated Plaintiff's rights is unnecessary and

20   Plaintiff's request for declaratory relief is properly **DISMISSED**.

21        **F.  Injunctive Relief**

22        Plaintiff also seeks injunctive relief.  (Doc. 59, pp. 21-22.)  "A plaintiff seeking a preliminary

23   injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

24   harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

25   injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20

26   (2008) (citations omitted).  "A preliminary injunction is an extraordinary remedy never awarded as a

27   matter of right.  In each case, courts must balance the competing claims of injury and must consider

28   the effect on each party of the granting or withholding of the requested relief.  In exercising their

31

sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*, at 24 (citations and quotations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.*, at 22.

Requests for prospective relief are further limited by 18 U.S.C. § 3626 (a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal Right."

"An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue, must adequately plead such a violation; . . ." *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994) (citations and quotations omitted). However, at the pleading stage, the Court is not in a position to determine questions of a claim's merits which require submission of evidence as opposed to merely determining whether a claim has been stated. *Barrett v. Belleque*, 544 F.3d 1060 (9th Cir. 2008). It is subsequent to screening, such as in efforts to survive summary judgment, that a plaintiff "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 845-46. Thus, Plaintiff's request for injunctive relief should not be addressed until such time as evidence is properly submitted for consideration.

## III.   Conclusion and Recommendation

For the reasons discussed hereinabove, the Court finds that Plaintiff's TAC states cognizable claims that do not violate Rule 18 upon which he should be allowed to proceed as follows: (1) against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW for deliberate indifference of Plaintiff's serious medical needs in violation of the Eighth Amendment; (2) against Defendants Dr. Blanchard and Prince LCSW for retaliating against Plaintiff based on his protected conduct in violation of the First Amendment; and (3) against Defendants Guards Cordova, Torres, and

J. Gomez and Sgt. Holland for excessive force in violation of the Eighth Amendment.  All other claims and Defendants should be dismissed.

Plaintiff was previously provided with the legal standards applicable to his federal claims and given leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Further leave to amend as to the federal claims is not warranted.

Accordingly, based on the foregoing, the Court **RECOMMENDS**:

1.      This action for damages proceed on Plaintiff's Third Amended Complaint on the following claims:

a.      against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW for deliberate indifference of Plaintiff's serious medical needs in violation of the Eighth Amendment;

b.      against Defendant Guards Cordova, Torres, and J. Gomez for excessive use of force and regarding the conditions of his confinement in violation of the Eighth Amendment and against Sgt. Holland for his knowledge and acquiescence in Defendant Guard Torres' use of excessive force; and

c.      against Dr. Blanchard and Prince LCSW for retaliation in violation of the First Amendment; and

2.      All other claims and Defendants should be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **30 days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

///

///

///

33

1    Plaintiff is advised that failure to file objections within the specified time may result in the

2  waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

3  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5  IT IS SO ORDERED.

6    Dated:   **MAY 20, 2016**                          _____ **/s/ Jennifer L. Thurston**

7                                                        UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28