# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KING MWASI, <br><br> Plaintiff, <br><br> v. <br><br> CORCORAN STATE PRISON, et al., <br><br> Defendants. | Case No. 1:13-cv-00695-DAD-JLT (PC) <br><br> **FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **(Doc. 83)** <br><br> **TWENTY-ONE DAY DEADLINE** |

Defendants contend Plaintiff violated 42 U.S.C. § 1997e(a) because he failed to exhaust the available administrative remedies. Despite lapse of more than a month beyond the allowed time, Plaintiff filed neither an opposition, nor a statement of opposition to Defendants' motion.[1] The motion is thus deemed submitted. L.R. 230 (*l*). For the reasons discussed below, the Court finds that Defendants' motion should be **GRANTED**.

///

///

///

---

[1] Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment in an order filed on June 1, 2017. Woods v. Carey, Nos. 09-15548, 09-16113, 2012 WL 2626912 (9th Cir. Jul. 6, 2012), Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). That notice warned Plaintiff that his failure to file an opposition or a statement of non-opposition to Defendants' motion could result in dismissal for failure to prosecute and that his failure to contradict Defendants' motion with declarations or other evidence would result in Defendants' evidence being taken as truth upon which final judgment may be entered. (Doc. 85.)

1

**FINDINGS**

**A.     Legal Standards**

    **1.     Summary Judgment Standard**

The Court must grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. The defense must produce evidence proving the failure to exhaust and summary judgment under Rule 56 is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

    **2.     Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Where, as here, a prisoner proceeds in an action under § 1983 on an amended complaint, the PLRA is satisfied if the inmate exhausted administrative remedies after the filing of the original complaint, but prior to the filing of the amended complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010). The key is that the claims must be "new," as in the events giving rise to them did not occur until after the filing of the original complaint, and the

precipitating events of the new claim(s) must be related to the events alleged in the original complaint. *Id.* Therefore, where the events a claim is based on occurred before the filing of the original complaint, the claim is not "new" and must have been exhausted before the filing of the original complaint. *Id.*

Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-

76 (9th Cir. 2005).

### 3. Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, an inmate initiates the grievance process by submitting a CDCR Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or related set of issues, per IA in the space provided on the form and one form attachment in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2),(4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents are to be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available, but are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level, and likewise thereafter to the third-level. Tit. 15 § 3084.2, .7. First and second-level appeals shall be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States mail service. Tit. 15 § 3084.2(d).

**B. Plaintiff's Claims**

Plaintiff filed the original Complaint in this action on April 24, 2013 (Doc. 1); the First Amended Complaint on November 14, 2013 (Doc. 24); the Second Amended Complaint on June

2, 2014 (Doc. 29); and the Third Amended Complaint on December 28, 2015 (Doc. 59).  This action is proceeding on the following three claims in the Third Amended Complaint:

    a.    against Defendants Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW for deliberate indifference of Plaintiff's serious medical needs in violation of the Eighth Amendment;

    b.    against Dr. Blanchard and Prince LCSW for retaliation in violation of the First Amendment; and

    c.    against Defendant Guards Cordova, Torres, and J. Gomez for excessive use of force and regarding the conditions of his confinement in violation of the Eighth Amendment and against Sgt. Holland for his knowledge and acquiescence in Defendant Guard Torres' use of excessive force.

(*See*, Doc. 59, 60, 63.)  The factual allegations of these claims must be identified as must Plaintiff's efforts to file IAs on them.  Any such IAs must then be examined to discern whether they adequately raised the substance of Plaintiff's claims and whether he sufficiently pursued them through the administrative remedies which were available to him.

    **1.**    **Plaintiff's Medical Claim[2]**

Plaintiff claims he gave a "list of symptoms" to Urbano LCSW, Prince LCSW, and Dr. Blanchard who ignored them.  Plaintiff further alleged that his "symptoms continued" which he describes as: "Sleep 16-18 hours; memory problems; lose train thought frequent; sense time off; difficult get on/stay on task; lack focus; speech slow (3-4 words min.); writing initially incoherent, require 3-5 drafts to eliminate incoherencies, 2-3 hours per page, per draft; registration bad, people talk, only half register; reading bad, sentence/passage to register; confused a lot; slow process info; & more."

From 2012 to "present" (presumably the date Plaintiff signed the TAC), Plaintiff asserts he repeated these symptoms in writing several times via "letters, 602s, etc., 7362s" to Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW who ignored him and failed to

---

[2] Plaintiff's allegations against Dr. Mahoney, Dr. Blanchard, Urbano LCSW, and Prince LCSW are found in paragraphs 44, 46-50, and 52-53 of the Third Amended Complaint.

5

address, treat, and/or investigate a cause/cure for Plaintiff's cognitive issues. These four Defendants merely "read, nod head, do nothing, as unimportant."

### a. Defendants' Motion

Defendants' evidence shows that Plaintiff submitted three appeals he filed the Complaint in this Court alleging deliberate indifference to his medical condition. (DUF Nos. 20-30, 38, 39, 42-44.) However, though he pursued these appeals to the final level, the third level of review of these appeals was not completed until March 14, May 19, and May 23, 2016 -- long after Plaintiff accused these Defendants of deliberate indifference in the Second Amended Complaint (filed June 2, 2014) and the Third Amended Complaint (filed December 28, 2015). (DUF Nos. 11, 12, 16, 17, 20-30, 38, 39.) Thus, the Defendants have demonstrated entitlement to a grant of summary judgment on Plaintiff's medical claim. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 199 (2007).

### 2. Plaintiff's Retaliation Claim[3]

Plaintiff alleged that in April or May of 2015, Dr. Blanchard and Prince LCSW removed Plaintiff from the mental health system despite Plaintiff's 10+ years as a patient with chronic, severe, suicidal, depression knowing this would trigger Plaintiff's abrupt transfer to Pelican Bay State Prison ("PBSP") in retaliation for Plaintiff's 602s and litigation activities. Plaintiff was transferred to PBSP in June of 2015; PBSP staff acknowledged that it was error by CSP-Cor staff for him to have been transferred; and they placed Plaintiff back in the mental health system and prescribed medication. As a result of the wrongful transfer to PBSP, for three weeks in June and July of 2015, Plaintiff completely lost his appetite, took in no food for 12 days, was distressed, had no desire, and had difficulty understanding.

### a. Defendants' Motion

Defendants' evidence shows that Plaintiff submitted one appeal regarding Dr. Blanchard and LCSW Prince removing him from CCCMS during this time and review of that appeal was not completed at the third level of review until May 23, 2016—five months after Plaintiff filed his

---

[3] Plaintiff's retaliation claim allegations against Dr. Blanchard and Prince LCSW are found in paragraph 48 of the Third Amended Complaint.

Third Amended Complaint. (DUF Nos. 28-31, 40, 41.) Thus, the Defendants have demonstrated entitlement to a grant of summary judgment on Plaintiff's medical claim. 42 U.S.C. § 1997e(a); *Jones* at 199.

### 3. Plaintiff's Excessive Force Claim[4]

On March 19, 2014, on the way to the law library, Cordova and Torres allegedly shoved Plaintiff against a metal table and wall. On the return to his cell, Gomez and Cordova allegedly did likewise which left him "with bruises to shin." Plaintiff did not understand what they said, but "quietly endured." Plaintiff wrote letters and 602s to Sgt. Holland and the Ombudsman which were allegedly ignored as were his requests to be moved to another unit. On May 21, 2014, again the way to the law library, after Plaintiff exited his cell, Torres allegedly hit Plaintiff in the head hard enough to knock Plaintiff's beanie off his head.

#### a. Defendants' Motion

Defendants present evidence that Plaintiff did not file any appeals that were accepted for review regarding the alleged March 19, 2014, use of excessive force by Defendants Cordova, Gomez, and Torres, or the alleged March 19, 2014, use of excessive force by Defendant Torres. (DUF Nos. 34-37.) This meets Defendants' burden for summary judgment on Plaintiff's excessive force claim. 42 U.S.C. § 1997e(a).

### 4. Plaintiff's Conditions of Confinement Claim[5]

Plaintiff claims Cordova, Gomez, and Torres were aware of his sleep disorder, that his sense of time was off, and that he had no clock -- all of which caused him to frequently oversleep. Plaintiff alleges that from September/October of 2013 to July of 2014, he was denied food 3-4 times per week by these three guards. They would frequently fail to wake Plaintiff when breakfast and lunch were served (these two meals were delivered to inmates at the same time), but would wake and tease Plaintiff when they removed his untouched food tray. Even when Plaintiff was awake, Plaintiff claims these guards would skip him and/or deny him food, but falsely write

---

[4] Plaintiff's allegations for this claim are found in paragraphs 63 and 64 of the Third Amended Complaint.

[5] Plaintiff's allegations for this claim are found in paragraphs 59-61, 65, 73, 74, and 76 of the Third Amended Complaint.

that he had received a food tray, and they would grin and tease/taunt Plaintiff. These three guards allegedly did not like having to write to communicate with Plaintiff and would come to his cell for various purposes, not write the purpose of their contact with Plaintiff, walk away and lie by indicating that Plaintiff refused whatever it was they had come to do at his cell. Many times, these three guards would use gestures at meal times to indicate that Plaintiff must talk to receive food and would then deny Plaintiff his food.

During this same time frame, in order to harass Plaintiff because of his cognitive difficulties, these three guards allegedly searched and ransacked his cell every time Plaintiff exited it –totaling more than thirty times—which was highly unusual and atypical. From September of 2013 to July of 2014, the three guards allegedly routinely refused to honor a "medical/ADA chrono" to do all communication with Plaintiff in writing. Further, around May 10, 2014, Torres issued a false RVR against Plaintiff indicting that Torres verbally told Plaintiff urine testing was needed and that Plaintiff verbally refused. Plaintiff alleges that Torres never communicated with him in writing regarding any random urine test. Plaintiff alleges this was an ongoing harassment by Torres because of Plaintiff's communication difficulties.

Plaintiff also alleged that these three guards deceived other staff into thinking he could speak which created confusion and caused Plaintiff to be discriminated against/denied services such as medications and mental health appointments. Plaintiff alleges that he notified Sgt. Holland of the situation but that Sgt. Holland turned a blind eye and tacitly encouraged the misconduct.

    **a.**  **Defendants' Motion**

Defendants' evidence shows that the only appeal timely submitted regarding Plaintiff's claims against Defendants Cordova, Holland, Gomez, and Torres was Appeal Log No. CSPC-6-14-00020, filed against Defendant Cordova on December 21, 2013. (DUF Nos. 6, 7, 33.) In this appeal, Plaintiff claimed that Cordova refused to wake him for meals and would skip him. (DUF No. 7.) Plaintiff also claimed that Cordova influenced other correctional officers not to feed him and, in his interview, claimed other unidentified persons were involved. (DUF No. 8.) This appeal was denied at the first level of review and Plaintiff failed to pursue it through any

additional levels of review. (DUF Nos. 9, 10.) Thus, the Defendants' are entitled to summary judgment on Plaintiff's conditions of confinement claim. 42 U.S.C. § 1997e(a); *Jones* at 199.

### **RECOMMENDATION**

Based on the foregoing, the Court **RECOMMENDS** that Defendants' motion for summary judgment, filed on May 30, 2017 (Doc. 83), be **GRANTED** and the action be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 17, 2017**              /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE